**UNITED STATES DISTRICT COURT**
**THE MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

DORIS HADCOCK,

vs.                                              CASE NO.: 5:20-CV-95-Oc-30PRL

JEST OPERATING, INC. d/b/a SOMERSET,
PATRICIA R. LEININGER,
MERIDETH C. NAGEL, MICHAEL J. ROGERS,
CHRISTIAN W. WAUGH,
MERIDETH NAGEL, P.A,
WAUGH LAW, P.A.,
GAYLORD & ROGERS, LLC, ELIZABETH HEIMAN, and
KIMBERLY SCHULTE.

_____/

**AMENDED COMPLAINT**

Plaintiff, Doris Hadcock, by and through her undersigned counsel, hereby files this

Amended Complaint against Jest Operating, Inc. d/b/a Somerset, Patricia R. Leininger, Merideth

C. Nagel, Christian W. Waugh, Michael J. Rogers, Merideth C. Nagel, P.A., Waugh Law, P.A.,

Gaylord & Rogers, LLC, Elizabeth Heiman, and Kimberly Schulte, (collectively referred to as

the "Defendants"), and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      At all material times hereto, Plaintiff, Doris Hadcock, was a citizen over the age

of 18 and is a permanent resident domiciled in Cayuga County, New York.

2.      At all material times hereto, Defendant, Jest Operating, Inc. d/b/a Somerset, was

and continues to be, a for-profit corporation incorporated and domiciled in the State of Florida.

At all times material hereto, Jest Operating, Inc. d/b/a Somerset conducted business in the State

of Florida.  Jest Operating, Inc. d/b/a Somerset's principal place of business is located at 4290 West Ave., Hialeah, Florida 33012.

3.     At all material times hereto, Defendant, Patricia R. Leininger, was a citizen over the age of 18 and is a permanent resident domiciled in Lake County, Florida.

4.     At all material times hereto, Defendant, Merideth C. Nagel, was a citizen over the age of 18 and is a permanent resident domiciled in Lake County, Florida.

5.     At all material times hereto, Defendant, Christian W. Waugh, was a citizen over the age of 18 and is a permanent resident domiciled in Orange County, Florida.

6.     At all material times hereto, Defendant, Michael J. Rogers, was a citizen over the age of 18 and is a permanent resident domiciled in Lake County, Florida.

7.     At all times material hereto, Defendant, Merideth C. Nagel, P.A., was a for-profit professional association incorporated and domiciled in the State of Florida. At all material times hereto, Merideth C. Nagel, P.A. conducted business the State of Florida. Merideth C. Nagel, P.A.'s principal place of business is located at 1201 West Hwy 50, Clermont, Florida 34711.

8.     At all times material hereto, Defendant, Waugh Law, P.A., was a for-profit professional association incorporated and domiciled in the State of Florida. At all material times hereto, Waugh Law, P.A. conducted business the State of Florida. Waugh Law, P.A.'s principal place of business is located at 321 N. Crystal Lake Avenue, Orlando Florida 32803.

9.     At all times material hereto, Defendant, Gaylord & Rogers, LLC, was a for-profit limited liability company formed and domiciled in the State of Florida.  At all material times hereto, Gaylord & Rogers, LLC conducted business the State of Florida. Gaylord & Rogers, LLC's principal place of business is located at 804 N. Bay Street, Eustis, Florida 32726. The managing members of Gaylord & Rogers, LLC are Frank T. Gaylord and Michael J. Rogers.

Frank T. Gaylord is a citizen over the age of 18 and is a permanent resident domiciled in the State of Florida.  Michael J. Rogers is a citizen over the age of 18 and is a permanent resident domiciled in the State of Florida.

10.     At all material times hereto, Defendant, Elizabeth Heiman, was a citizen over the age of 18 and is a permanent resident domiciled in Lake County, Florida.

11.     At all material times hereto, Defendant, Kimberly Schulte, was a citizen over the age of 18 and is a permanent resident domiciled in Lake County, Florida.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity of citizenship) because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, attorneys' fees and costs, and the parties have complete diversity.  Plaintiff is domiciled in the State of New York, and none of the Defendants are domiciled in the State of New York.

13.     All conditions precedent to the filing of this action have occurred, accrued, or have been waived as a matter of law.

14.     Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391, as the transactions and occurrences giving rise to this action occurred within this Court's jurisdiction in Lake County in the State of Florida.

**<u>GENERAL ALLEGATIONS</u>**

15.     Doris Hadcock (hereinafter "Doris") was residing in her Tavares, Florida vacation home with her husband, Neal Hadcock (hereinafter "Neal"), when she endured a chain of events that would lead to her imprisonment against her will at an assisted living facility, while having all of her real estate and personal assets sold off by an abusive Florida guardian.

3

16.     Doris was born on November 26, 1929 and is currently ninety (90) years of age. Doris's husband, Neal, was born on November 5, 1923.

17.     Doris married Neal on her birthday in 1948, in upstate New York, where they continuously resided throughout their lives.

18.     Doris's background consists of a long life of hard work.  Doris graduated from her high school as the school's valedictorian. Instead of going to college, Doris followed in her father's footsteps and worked for the railroad starting at the age of 16-years-old.  Doris continued to work for the railroad for the next twenty (20) years performing hard, physical work. Thereafter, she joined her husband, Neal, in his business, and she continued performing hard, physical work involving septic tanks, farm work, drive ways, and parking lots.

19.     Doris and Neal became "snowbirds" after their retirement, and they would travel together to the State of Florida during the winter and then return to their home in New York.

20.     Doris and Neal, at the time of the events described herein, owned two pieces of real property in the State of New York and two pieces of real property in the State of Florida.

21.     Prior to her unlawful detainment in 2015, Doris and Neal had been married for sixty-six (66) years.

22.     Despite their respective ages, Doris and Neal were self-sufficient and capable of accomplishing everyday tasks without the assistance of caregivers.  In fact, Doris took care of cooking and cleaning the home she lived in with her husband, paid the family bills, was completely capable of grooming herself, dressing herself, performing yard work and tending to her trees and plants, and generally performed all other aspects of daily living with her husband, free from any family, or professional assistance or interference.

23.     On January 28, 2015, Doris injured her back while packing and lifting boxes in her Florida home, preparing to return to her home in New York.

24.     After a couple of weeks of pain without improvement, on February 8, 2015, Doris was taken by ambulance to Waterman Hospital.

25.     Unbeknownst to Doris while she was hospitalized, Neal was taken to Jest Operating Inc. d/b/a Somerset's (hereinafter "Somerset") assisted living facility located in Tavares, Florida.

26.     After spending three days at Waterman Hospital, Doris was transferred directly to the Ruleme Center, a rehabilitation facility, located in Eustes, Florida.

27.     While at Ruleme Center, Doris also underwent cognitive testing, including a BIMS assessment reflecting a score of 15/15 (indicating no cognitive deficits) and a SLUMS cognitive assessment again, indicating no significant cognitive impairment.  Accordingly, the personnel at Ruleme Center determined that Doris had capacity to make the decision as to where she was to be discharged.

28.     During Doris's rehabilitation at Ruleme Center, Doris expressed that she wished to be discharged to her home upon completion of her rehabilitation.

29.     On March 18, 2015 Elizabeth Heiman (hereinafter "Heiman"), the owner and administrator of Somerset, completed an AHCA Form 1823 for Doris to be discharged from Ruleme Center to Somerset without Doris's review, signature, or consent.

30.     Upon completion of her rehabilitation at Ruleme Center, on March 23, 2015, Doris thought she was being returned to her home, but instead, was taken from Ruleme Center by Somerset employees.  The Somerset employees transported Doris directly to Somerset's facility without her consent and without any court order or other proper legal authority.

31.     Neither Somerset, nor any other person or entity, provided any notice or opportunity to be heard before any legal or administrative proceeding concerning a limitation on Doris's right to determine where she wanted to live, or any other restriction of her personal rights or freedom of movement.

32.     Once at Somerset, Doris was surprised to see that Neal had already been transported and housed at the facility.

33.     Doris wasted no time in advising the Somerset staff that she did not want to be held at the facility, but she was not permitted to leave.

34.     Although Doris requested the basis for her or Neal's transfer to Somerset without their authorization or approval, Somerset failed to provide her any information justifying the detention.

35.     In fact, Doris was told by Somerset the following materially false statements:

    a.   "You cannot leave until you pay your bill."

    b.   "You cannot move back to New York; you are a ward of the State of Florida."[1]

    c.   "The Carriers are not your blood relatives, and you cannot leave with them."

36.     After Doris realized that she and Neal were being held against their will by Somerset, Doris began contacting her long-time friends in New York, Shelley Carrier (hereinafter "Shelley") and Kevin Carrier (hereinafter "Kevin")(collectively "the Carriers"), on a daily basis, pleading for assistance helping her get released from Somerset to return to her home.

37.     Doris, with Shelley's assistance, continued to make repeated requests to the employees and management of Somerset to be released, but these efforts were met with false information from Somerset as to why Doris was held at the facility.

---

[1] At the time that this statement was made it was several months before any guardianship proceedings had been initiated in relation to either Neal or Doris.

6

38.     To make matters worse, Somerset separated Doris from Neal, with whom she had originally been permitted to share a room together.

39.     Thereafter, Doris was placed in a small room, shared with another elderly person that she did not know.

40.     Doris's room had no window, a single chair, and a dresser.  Doris describes her room as a "prison cell."

41.     Neal was placed in a separate room, and Doris was not permitted inside Neal's room.

42.     Doris and Neal were not given any privacy, and Doris was only able to see Neal when he was permitted out of his room.

43.     Somerset also did not permit Doris to eat her meals with Neal during dining times.

44.     At some point, Neal was placed in "lock-down," further restricting his freedom of movement within Somerset.

45.     As a result of the constant pleas for release, a Somerset staff physician ordered Doris and Neal to be medicated and sedated due to "anxiety."

46.     In a startling episode, Doris called the Carriers in New York complaining of feeling ill.  The Carriers called an ambulance, and Doris was taken to the hospital, and she was diagnosed with extreme dehydration.

47.     When Doris returned from the hospital to Somerset, she was threatened by a Somerset employee that she "better not ever call an ambulance like that again."

48.     Even more horrifying, Neal was taking a walk outside of Somerset after the designated hours, and he was forcibly taken into the facility, and forced to sleep in a chair in an unfamiliar room as a "punishment" for violating Somerset's rules.

49.     In July of 2015, the Carriers, concerned with what they had heard from Doris regarding Somerset, attempted to intervene in the situation to secure the release of Doris and Neal and sought advice from their attorney in New York.

50.     On July 24, 2015, Doris and Neal requested that the Carriers transport them to execute health care surrogate documents and powers of attorney to facilitate Doris and Neal's removal from Somerset and return to New York.

51.     Thereafter, Somerset then contacted the Florida Department of Children and Families ("DCF") initiating an investigation into the Carriers to prevent Doris and Neal from leaving the facility and returning to New York to make sure its bill was paid.

52.     DCF commenced its investigation on August 11, 2015.

53.     Heiman and Somerset employees provided false information to DCF, representing that the Carriers were seeking to exploit Doris and Neal.  They even represented that the Carriers stole money from Doris and Neal, which was determined to be untrue.

54.     Heiman and Somerset also provided false information that the Carriers had transferred real estate and personal assets from the Doris and Neal to themselves.

55.     Heiman and Somerset additionally advised DCF that Doris and Neal were incapacitated and that they willingly entered Somerset.

56.     Despite the false information provided to DCF, DCF noted that Doris wanted to leave the State of Florida with the Carriers and return to the State of New York.

57.     Angela Rachel (hereinafter "Rachel") of DCF ignored Doris's requests to leave Florida and go to New York, and through attorney, Kimberly Schulte, initiated Florida guardianship proceedings to have professional guardians appointed by the State of Florida for Doris and Neal.

58.     On August 12, 2015, the Carriers paid Florida attorney, Michael J. Rogers, (hereinafter "Rogers") of Gaylord & Rogers, LLC (hereinafter "Gaylord & Rogers") to represent Doris and Neal in the State of Florida.

59.     Rogers collected this initial payment from the Carriers characterizing the payment for a telephone consultation with the Carriers concerning Doris and Neal.

60.     Rogers ultimately provided representation to Doris as her court appointed attorney from August 13, 2015 through December, 2015. He was formally appointed as Doris's counsel on August 27, 2015.

61.     Rogers was paid out of Doris's funds through the guardianship for his services from August 13, 2015 through December, 2015.

62.     On August 13, 2015, Rogers advised the Carriers that he was confident that Doris did not need a guardian.

63.     He advised the Carriers not to pick up Doris and that the matter would be resolved within thirty (30) days.

64.     On August 20, 2015, Kimberly Schulte (hereinafter "Schulte") filed a Petition for Appointment of a Plenary Guardian seeking to remove Doris's rights, have her deemed incapacitated, and have Dorothy Ann Varner appointed as Doris's guardian.  In the Petition, Schulte falsely represented that Doris suffered from dementia.

65.     Schulte, based on false information, sought to remove the following rights from Doris: (i) to marry; (ii) to contract; (iii) to sue and defend lawsuits; (iv) to determine her residency; (v) to consent to medical treatment; (vi) to personally apply for government benefits; (vii) to make decisions about her social environment or other social aspects of his or her life; (viii) to vote; (ix) to travel; (x) to have a driver's license; (xi) to seek or retain employment; and (xii) to manage property or to make any gift or disposition of property.

66.     Prior to the filing of the Petition for Appointment of a Plenary Guardian, Rogers conferred with Schulte, Heiman, and Dorothy Ann Varner on August 13, 2015, August 14, 2015, August 17, 2015, and August 18, 2015, in a joint effort to have Doris's rights taken away, have Doris detained in Heiman's facility at Somerset, and have Dorothy Ann Varner appointed as Doris's guardian.

67.     The day before Schulte filed the Petition for Appointment of a Plenary Guardian, on August 19, 2015, Schulte billed Doris for contacting Dr. Thomas Sawyer and Barbara Priess concerning Doris, who both went on to become two (2) of the three (3) members of Doris's examining committee members.

68.      Notably, examining committee members are selected randomly by the court, and therefore, Schulte should have not selected and interfaced with the examining committee members before a petition for determination of incapacity had even been filed.

69.     As all of this was happening with Doris, her husband Neal, was placed into a guardianship on October 6, 2015 involving all of the same players.

70.     On November 4, 2015, Christian Waugh (hereinafter "Waugh") of Waugh Law, P.A. (hereinafter "Waugh Law") substituted in as Doris's court-appointed counsel replacing Rogers.

71.   In December 2015, nine months into being held at Somerset against her will, based upon Somerset's misrepresentations about Doris's mental capacity to DCF, a capacity proceeding was initiated in Lake County Guardianship Court.

72.   Ultimately, despite the efforts of Rogers, Schulte, and Heiman, the court did not determine that Doris was totally incapacitated.  To the contrary, the court entered an order on December 14, 2015 finding limited incapacity and allowed Doris the retention of certain rights, most importantly her right to determine her residency.

73.   The guardianship court overseeing the matter appointed Patricia Leininger (hereinafter "Leininger") as the limited guardian.  Leininger retained attorney Merideth C. Nagel, (hereinafter "Nagel") of Merideth Nagel, P.A., (hereinafter "Nagel P.A.") as guardianship counsel.

74.   On December 16, 2015, Rogers sought fees from the court for the "work" he performed for Doris.  In his Petition and Affidavit of Attorney's Fees, Rogers described Doris to the court as an "eighty-six year old woman with dementia and other medical issues."

75.   Doris was not diagnosed with dementia, and Rogers knew this because he charged Doris one half (0.5) hour to review the June 8, 2015, Neuropsychological Evaluation of Dr. Karen Estill, who opined that Doris scored better than her peers in a wide variety of cognitive tests.  Dr. Karen Estill diagnosed Doris with mild neuro-cognitive disorder, which is not a major neuro-cognitive disorder like dementia or Alzheimer's.  Dr. Karen Estill's diagnosis of Doris's cognitive capacity was consistent with the testing that was done months earlier at Ruleme Center, finding that she did not suffer from Alzheimer's or dementia.

76.   Rogers billed Doris for his review of Dr. Karen Estill's report, but Rogers failed to take any action on her behalf to support her capacity.  Instead, he uncritically accepted the

misrepresentations made by Doris's opponents in the guardianship proceeding, that she suffered from dementia and Alzheimer's, despite charging for review of documentation showing that she did not.

77.     Rogers also stated Doris was "vulnerable to exploitation and is not capable of managing her health care or finances and needs supervision and assistance with many areas of daily living." Rogers made this representation to the court despite accepting payment from the Carriers, the purported threat to exploit Doris and Neal.

78.     Rogers described to the court that the benefit he provided was having the "ward [Doris] determined to have total incapacity."

79.     Rogers also advised the court that "The ward [Doris] will continue to reside in Somerset, an assisted living facility, which satisfactorily provides for the ward's social and physical needs."

80.     Rogers was court-appointed counsel for Doris, and he collected fees from Doris for representing her directly for four (4) months while Heiman, Schulte, and Somerset sought to restrict Doris from leaving Somerset, to impose an unnecessary guardianship, and to take away her rights.

81.     Schulte sought her fees from Doris on December 11th, 2015, representing that Doris suffered from a major cognitive disorder, likely of the Alzheimer's type. Schulte was also paid by Doris for her actions against Doris's best interests.

82.     During the time of Rogers's representation, Doris had advised Rogers, Heiman, Somerset, and Rachel that she wanted to leave the facility. In fact, she even contemporaneously told the Somerset nursing staff that her time at Somerset was like "being in jail."

83.     On November 23, 2015, Doris's medical records reflect that Doris told Somerset staff that she was referring to her living conditions in Somerset as though it was a jail.

84.     Despite the clear indication that Doris wanted to leave the facility, her attorney, Rogers, congratulated himself for securing her detention in Somerset, which he swore to the court in his fee affidavit that Somerset "satisfactorily provides for the ward's [Doris's] social and physical needs."

85.     Rogers failed to mention to the court in his December 16, 2015, Petition and Affidavit of Attorney's Fees that his client, Doris, was tripped by a visiting nurse at Somerset on May 29, 2015 causing her to fall and injure her right leg.  He also neglected to mention that the visiting nurse kept walking by Doris, and left her on the ground writhing in pain, until she was assisted by a Somerset staff member.

86.     Rogers also did not mention that Doris requested x-rays be taken following the incident, but the request was denied by Somerset.

87.     Rogers additionally failed to mention that his client, Doris, was again injured at Somerset on August 5, 2015 when she fell.  Rogers did nothing in response to these incidents.

88.     During the four-month period of his representation of Doris, Rogers only spoke with her twice.  He conferred with her for one (1) hour on August 13, 2015, and then he conferred with her for one half (0.5) hour about Christian Waugh substituting in as her counsel. Conversely, Rogers spent over three (3) hours conferring with Schulte, nearly two (2) hours conferring with Dorothy Ann Varner, and the same amount of time he spent talking to Doris speaking with Heiman.

89.     Rogers, during his representation, completely failed to apprise Doris of the guardianship proceeding, what was at stake, or that he was taking action to have a guardianship established and keep her at Somerset.

90.     Rogers took no action to remove Doris from Somerset, or to the contest the guardianship, in spite of his client's demands.

91.     Rogers took no action to establish Doris's competency, despite the fact that the only medical evidence available at the time of his appointment showed that she was competent.

92.     Instead, he worked against Doris's interests with Schulte, Heiman, and Dorothy Ann Varner to establish a guardianship in favor of the pecuniary interests of Schulte, Heiman, and Dorothy.

93.     In fact, his invoices and representations to the court reflect that he was actually acting entirely against Doris's stated interests in every way, seeking to have her deemed incapacitated and to have her detained at Somerset indefinitely.

94.     Contrary to the representations of Rogers, Heiman, Schulte, and Rachel, Doris, three (3) years later was evaluated by neuropsychiatrist, Dr. Theresa Covington, who opined that Doris had a stable condition and that she did not have Alzheimer's or any serious cognitive impairment.

95.     Rogers later elected to cease representing Doris and became court-appointed counsel for Neal.

96.     Although the capacity proceeding sought to have Doris declared completely incapacitated, the Guardianship Court refused to strip Doris of her right to choose where she wanted to live, her right to travel, or to make decisions about her social environment or other social aspects of his or her life.

97.     Following Leininger's appointment as guardian, Doris requested that she be permitted to leave Somerset to Heiman, Leininger, Waugh, and Nagel, but they all ignored her.

98.     Somerset even ignored the court's order that the guardianship was limited and continued to refuse the repeated pleas by Doris and the Carriers to release her.

99.     Moreover, despite Doris being held against her will, Leininger, who owed a fiduciary duty to Doris, also ignored Doris's pleas, and refused to take any action to assist her in securing her freedom.

100.    Additionally, although Nagel was hired by Leininger, Nagle owed a fiduciary duty to act in the best interests of Doris, who would ultimately be paying the legal fees of Nagel P.A. for all services as counsel for Leininger.

101.    Instead, Leininger, with the assistance of Nagel, exploited and took inexcusable advantage of their fiduciary responsibilities to Doris by obtaining authorization from the Guardianship Court to pay Somerset its extravagant and unauthorized fees for housing Doris for the entire time she was held against her will at Somerset.

102.    Leininger and Nagel also sought authorization from the Guardianship Court to pay all of their fees incurred during their "representation" of Doris under the limited guardianship until Doris was finally released and the guardianship ultimately transferred from Florida to New York.

103.    At no point during Doris's guardianship did Leininger or Nagel ever protest Somerset's fees, or advise the Guardianship Judge that Doris was charged fees by Somerset while Doris was detained there without any legal authority by Somerset and against Doris's will.

104.    Furthermore, even after the Guardianship Judge affirmed that Doris retained her right to choose her residence (which was consistent throughout all of the proceedings from the

outset), neither Leininger nor Nagel took any efforts to secure Doris's freedom from Somerset, or to permit her to return to New York.

105.    In fact, Leininger and Nagel actually sought to have the Court deny Doris the right to choose her residence (and sought and obtained payment from Doris's assets for these efforts), while Doris was left to rely upon the Carriers to assist her in securing her release from Somerset.

106.    Notably, Leininger also objected to, and hindered, every effort to assist Doris in accomplishing anything she wanted.

107.    Even three months after the Judge affirmed that Doris retained the right to determine her place of residence, despite repeated efforts by Doris and Shelley to seek her release, she Doris continued to be detained at Somerset.

108.    Eventually, Doris would be permitted to leave Somerset because the Guardianship Court itself was concerned that Doris was being held against her will.

109.    At the courthouse, in a horrifying display of cruelty and with the clear intent to intimidate Doris, when she discovered that Doris would finally be permitted to leave the State of Florida, Leininger stuck her finger right up to Doris's face and stated: "You have no money.  I can sell your property, and there is nothing you can do to stop me."

110.    Despite all of the above, Somerset only actually agreed to release Doris when the Carriers appeared in person at Somerset and threatened to call the police if it did not let Doris go. Only after this standoff did Somerset finally release Doris on March 5, 2016, almost one year after having been falsely imprisoned at the Somerset facility.

111.    Doris weighed 145 pounds on March 24, 2015, the day after she arrived at Somerset.  On February 24, 2016, a week before she left Somerset, she weighed a mere 114 pounds.

112.    Due to her understandable fear of being improperly detained against her will any further by Somerset, Doris decided that she would have leave the State of Florida and return to the State of New York with the Carriers.

113.    As a result, Doris was forced to leave her companion of more than sixty-seven (67) years behind, but promised she would return for him, and she kissed Neal and said "goodbye."

114.    Sadly, Neal died on April 18, 2016, just a month after Doris returned to New York, and she never had the opportunity to see him again.

115.    On the same day that Neal died, April 18, 2016, Rogers, now Neal's court appointed counsel and Schulte, now counsel for Neal's guardianship, and Dorothy Ann Varner, now Neal's guardian, sold Doris and Neal's family home in New York for a fraction of its value to pump funds into Neal's guardianship before his assets would pass into probate and onto Doris, who had escaped to New York.  Despite the fact that the property was marital property, Schulte, nor Rogers, Doris's former counsel, distributed none of the proceeds to Doris.

116.    Similarly, Schulte and Rogers upon establishing the guardianship of Neal, began to deduct half of Doris's railroad Social Security payments into Neal's guardianship estate.

117.    After leaving Somerset, Doris returned to her home to get some personal belongings to return to New York, however, was surprised to find out that she had been locked out of her own home.  Doris soon found out that Leininger had all the locks changed and

Leininger refused to allow her entry to her own home to collect her belongings.  Doris returned to New York with only the clothes on her back.

118.   Once in New York, Doris sought to have the Florida guardianship proceeding transferred to New York because she intended to continue to keep New York as her permanent residence.  Thereafter, she also sought to have her rights restored because she is, and never was, mentally incapacitated.

119.   Eventually, Doris was fully vindicated and had all of her rights restored on September 19, 2019.

120.   After Doris left for New York, and during the period of time until her rights were ultimately restored, Doris further suffered immeasurable losses due to the outrageous conduct of Leininger and Nagel who were supposed to be acting in her best interest.

121.   At the time that Doris and Neal were incarcerated at Somerset, they owned four (4) houses, and had considerable personal property that they had accumulated at great difficulty by virtue of modest living throughout their decades of arduous work.

122.   After Neal died, Leininger sought to be appointed as the personal representative to Neal's estate, as the guardian of Doris, who was designated by her husband in his will to be the personal representative.  Nagel was hired by Leininger to be her counsel as personal representative.

123.   Rather than making effort to preserve Neal's estate, so that assets could be preserved for Doris (most of which was jointly owned by Doris anyway) Leininger liquidated every single asset and personal possession that Doris and Neal accumulated over their entire lives to pay the fees of Somerset and the fees incurred by Leininger and Nagel in connection with the guardianships of Doris and Neal, and for the probate of Neal's estate.

124.     After proceeding to seek Court approval to sell Doris and Neal's homes, despite Doris' request to give her time to secure her personal possessions, Leininger provided an unrealistic time frame of only fifteen days for Doris to gather her possessions.

125.     Due to her inability to retrieve and secure her possessions within this time frame, everything Doris and Neal accumulated was either sold for pennies, given away, or discarded.

126.     Ultimately, Doris was left homeless, penniless, and stripped of any possessions she and her deceased husband, Neal, had accumulated together.

127.     Besides stripping Doris of all of her assets, Leininger also refused to provide Doris any money whatsoever, while she was living in New York, from her social security, bank accounts, or other sources of funds from which she had the right to receive to care for Doris's basic needs, such as food or housing.

128.     But for the charitable kindness of the Carriers, Doris would have been left homeless and without any means to provide for herself because the guardians and attorneys left her with nothing.

129.     The Carriers have not made a single penny in profit from Doris or Neal, but have spent their own money to pay for Doris's maintenance and well-being for nearly four (4) years. The Carriers were originally, as was referenced above, the very same Carriers accused by Somerset of exploiting Doris and Neal to generate the guardianship proceedings which enabled Somerset to hold Doris and Neal longer.

130.     Even after hiring an attorney in New York to assist Doris in seeking money for living, Leininger chose to first seek court approval limit Doris's disbursements from the Guardianship to $100 per month, which was just a fraction of what Doris had requested (Doris's

Railroad pension pays $469.08 per month alone).  Despite obtaining authorization from the Guardianship Court, Leininger refused to send any payments to Doris.

131.    Contrary to the fiduciary obligations owed to Doris, Leininger and Nagel engaged in actions and omissions which stripped Doris of everything she had and instead of using any of her assets for the best interests of Doris, Leininger and Nagel used all proceeds from Neal and Doris's assets to pay for the wrongful actions of Somerset, as well as their own fees.

132.    Leininger even sold Doris's New York home, at which she lived her entire life with Neal, to a family she knew Doris despised, who then bulldozed her home to use it for hunting deer.

133.    Moreover, as the personal representative and counsel, respectively, Leininger and Nagel refused to object or contest the fees of Somerset or the fees of Neal's guardian, the fees of Rogers, or the fees of Schulte.

134.    Fully aware of Roger and Schulte's conflict and abandonment of his client in order to represent Neal to divert the marital assets away from Doris who was no longer under the control of the Florida guardianship, Leininger and Nagel owed a duty to Neal and Doris to object and/or seek damages for harm caused to Neal and Doris by Rogers.   Instead, they raised no objection to the fees and sold Neal and Doris's assets so that their fees could be paid.

135.    Neal's guardian and Rogers even refused to allow Doris to have Neal's remains for five months after he had passed.

136.    Doris has retained the undersigned law firm to represent her for the unlawful actions of Somerset, Leininger, and Nagel as set forth in this lawsuit, and is obligated to pay the undersigned law firm a reasonable fee for its services and costs incurred in prosecuting this lawsuit.

137.    Doris is entitled to seek disgorgement from the guardian and guardian's counsel for any improperly obtained amounts paid to them for their own fees and the attorney's fees and costs incurred by Doris for seeking said disgorgement.

138.    Doris is entitled to seek disgorgement from Leininger and Nagel for any improperly obtained amounts paid to them for their own fees in connection with their service as the personal representative and counsel for Neal's estate and the attorney's fees and costs incurred by Doris for seeking said disgorgement.

139.    Doris is entitled to attorney's fees and costs against Somerset for seeking reimbursement of any fees paid to it by Doris and/or Neal in connection with their stay at Somerset by virtue of any written agreement with Somerset which set forth any obligation by Doris and/or Neal to pay for their housing at Somerset, and the fees and costs to Somerset for collecting payment for such housing.

### <u>COUNT I – FALSE IMPRISONMENT AGAINST SOMERSET</u>

140.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

141.    Somerset intentionally confined and/or restrained Plaintiff within the confines of its facility, located at 2450 Dora Ave., Tavares, Florida.

142.    Plaintiff requested to leave Somerset, but was instructed that she would not be permitted to leave until she had paid the balance of her outstanding bill.

143.    Plaintiff was physically prevented from leaving Somerset on multiple occasions.

144.    Somerset made material misrepresentations to Plaintiff to convince her that she was not permitted to leave the facility.

21

145. During the time Plaintiff was at Somerset, Plaintiff was confined within a bounded area with no reasonable means of safe escape, due to the direct actions of Somerset and its employees.

146. Somerset and its employees, acting within the regular course and scope of their employment, acted with the purpose of confining Plaintiff, or in the alternative, acted knowing that Plaintiff's confinement was a substantially certain result based upon its conduct.

147. Plaintiff was fully aware and conscious of her confinement at Somerset's facility. On multiple occasions, Plaintiff was informed that she was not allowed to leave the facility and prevented from leaving.

148. Ultimately, only after the intervention of third parties who threatened to call the police was Plaintiff released from Somerset.

149. Somerset held Plaintiff for nearly a year against her will in the State of Florida, prevented her from seeing her husband, and prevented her from seeing her friends who were outside of the facility.

150. Plaintiff was thereafter afraid of the State of Florida.

151. Plaintiff was also unable to see her husband before he passed.

152. As a direct and proximate cause of the foregoing, Plaintiff was falsely imprisoned at Somerset's facility and has suffered extreme mental anguish, suffering, emotional distress, anxiety, and loss of freedom and enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Somerset for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including, but

not limited to, punitive damages, interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT II – NEGLIGENCE AGAINST SOMERSET

153.   Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

154.   At all times material hereto, Somerset had a duty to provide for the well-being of Doris for which she paid a very significant monetary cost.

155.   Somerset, likewise had a duty to keep Doris free from harm.

156.   The acts and omissions of Somerset through its principals and employees breached this duty to Plaintiff when it harmed Doris physically, mentally, and emotionally.

157.   Doris was repeatedly physically harmed during her stay at Somerset due to the negligence of Somerset employees in the regular course and scope of their employment with Somerset.

158.   The conduct of the employees of Somerset were motivated at least in part by their purpose of fulfilling the obligations of their respective positions as employees for Somerset.

159.   The conduct of the employees of Somerset took place during regular business hours and within regular business conduct.

160.   As a direct and proximate result of the Somerset's acts and omissions Doris suffered damages, including anguish, pain, suffering, emotional distress, anxiety, and loss of freedom and enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Somerset due to its negligence, for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity,

including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT III – ASSAULT AGAINST SOMERSET

161.   Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

162.   Somerset intentionally and unlawfully overtly put Plaintiff in reasonable apprehension of imminent danger when its employees, acting within the regular course and scope of their employment, repeatedly refused to release Plaintiff from its facility.

163.   Plaintiff was fully aware of Somerset's refusal to release her from its facility, and of the purported force and control that it would exert over her in order to detain her.

164.   Somerset also threatened Plaintiff not to call an ambulance if she was sick.

165.   Somerset further threatened Doris by making an example of Plaintiff's husband by forcing him to sleep in a chair in a different room to deter breaking Somerset's rules.

166.   Somerset had an apparent, present ability to physically injure, restrain, and detain Plaintiff and effectuate that ability, and Plaintiff was unable to prevent any such attempt through no fault of her own.

167.   As a direct and proximate cause of the foregoing assault, Plaintiff has suffered extreme mental anguish, suffering, emotional distress, anxiety, and loss of freedom and enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Somerset for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including, but not limited to, punitive damages, interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

24

## COUNT IV – BATTERY AGAINST SOMERSET

168.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

169.    Somerset inflicted a harmful and offensive contact with Plaintiff's person when its employees forcefully touched Plaintiff inside its facility, in order to restrain and deny Plaintiff the ability to leave its facility.

170.    Somerset's employees intended to cause the harmful and offensive contact with Plaintiff's person in order to restrain Plaintiff and deny her the ability to leave its facility.

171.    The forceful touchings to restrain and detain the Plaintiff were unwanted and offensive to Plaintiff, and were wholly uninvited.

172.    At all times relevant, the employees were employees of Somerset located at 2450 Dora Ave., Tavares, Lake County, Florida 32778, and were acting within the regular course and scope of their employment at Somerset.

173.    The conduct described occurred at the premises of Somerset's facility located in Tavares, Florida, while the employees of Somerset were acting within the regular course and scope of their employment at Somerset.

174.    As a direct and proximate cause of the foregoing, Plaintiff was battered and suffered extreme mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Somerset for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including, but

not limited to, punitive damages, interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT V – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST SOMERSET

175.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

176.    The conduct of Somerset and its employees was intentional or reckless in its refusal to permit Plaintiff to leave its facility despite repeated requests.

177.    Plaintiff's emotional distress from her detention was completely foreseeable under the circumstances described herein.  Somerset and its employees either intended the wrongful result of their behavior or did or should have reasonably foreseen that Plaintiff's severe emotional distress was certain or substantially certain to result. In the alternative, Somerset and its employees acted recklessly and in deliberate disregard for the high degree of probability that Plaintiff's severe emotional distress would follow as a result of their conduct.

178.    The conduct of Somerset and its employees was extreme and outrageous beyond all bounds of human decency, so as to be deemed utterly intolerable in a civilized community. Plaintiff was held against her will and forced to remain at Somerset's facility in Tavares, Florida, for nearly a full year.  Somerset's conduct in the instant case is antithetical to what is tolerable in a civilized community because no civilized community would permit the unlawful detention of an individual.

179.    Somerset and its employees intentionally or recklessly caused Plaintiff to suffer severe emotional distress through her unlawful detention.

180.    At all times relevant, the employees were employees of Somerset located at 2450 Dora Ave., Tavares, Lake County, Florida 32778, and were acting within the regular course and scope of their employment at Somerset.

181.    As a direct and proximate cause of the foregoing, Plaintiff has suffered mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Somerset for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including, but not limited to, punitive damages, interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT V – FALSE IMPRISONMENT AGAINST LEININGER

182.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

183.    Leininger intended to confine and/or restrain Plaintiff within the confines of Somerset's facility, located at 2450 Dora Ave., Tavares, Florida, for above described time period.

184.    Plaintiff was confined within a bounded area with no reasonable means of safe escape, due to the direct actions of Somerset and its employees.

185.    Leininger, as Plaintiff's guardian, took deliberate action to prevent Plaintiff from being released from Somerset, knowing that the result of such inaction would be the continued confinement of Plaintiff at Somerset's facility. Leininger's actions were committed with the

purpose of confining Plaintiff, or in the alternative, were committed knowing that Plaintiff's confinement was a substantially certain result.

186.    Leininger even threatened Plaintiff when she discovered that Plaintiff would be released from Somerset.

187.    Leininger followed through with her threats following Plaintiff's departure from the State of Florida.

188.    Plaintiff was fully aware and conscious of her confinement at Somerset's facility. On multiple occasions, Leininger informed Plaintiff that she was not allowed to leave the facility and that she must remain.

189.    As a direct and proximate cause of the foregoing, Plaintiff was falsely imprisoned at Somerset's facility and has suffered extreme mental anguish, suffering, emotional distress, anxiety, and loss of freedom and enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Leininger for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including, but not limited to, punitive damages, interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

### COUNT VI – BREACH OF FIDUCIARY DUTY AGAINST LEININGER

190.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

191.    During the relevant time period as described herein, Leininger had a fiduciary duty to Plaintiff to act in her best interests until Leininger was discharged as guardian, including, among other things, a duty of loyalty.

192.    Leininger, as guardian for Plaintiff, was negligent and reckless in the exercise of her fiduciary duties to Plaintiff, resulting in damages to her.  Leininger, was also negligent and reckless in the exercise of her fiduciary duties to Plaintiff as the personal representative of the estate of Plaintiff's husband.

193.    Leininger repeatedly breached her duty of loyalty to the Plaintiff by acting against her interests in favor of third parties, including attorneys, Somerset, and third parties to whom she sold or gave away Plaintiff's property.

194.    Leininger breached her duty of loyalty to Plaintiff by opposing her efforts to exit the state of Florida.

195.    Leininger also breached her duties owed to Plaintiff by failing to take actions for the benefit of Plaintiff, a ward at the time, including but not limited to: (a) failing to seek Plaintiff's removal from Somerset's facility located in Tavares, Florida; (b) mismanagement of Plaintiff's funds in making payments to Somerset after its wrongful imprisonment of Plaintiff; (c) failing to honor and recognize the rights that Plaintiff expressly retained pursuant to court order, including but not limited to, the right to determine her own place of residence; (d) disposing of Plaintiff's assets and personal belongings and the assets and personal belongings of her husband that she would have inherited; and (e) failing to honor and recognize Plaintiff's wishes securing her release from the Somerset facility and allowing her to leave the State of Florida.

196.    As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Leininger actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT VII – BREACH OF FIDUCIARY DUTY AGAINST NAGEL

197. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

198. Nagel represented Leininger, in her capacity as guardian for Plaintiff, in connection with the limited guardianship that was established in December, 2015.

199. Counsel for Leininger, while she was acting as guardian for Plaintiff, owed similar duties to Plaintiff and was fully aware that the work she was doing for Leininger, as guardian of Plaintiff, was for the benefit of the Plaintiff.

200. Nagel as counsel for Leininger, was negligent and reckless in the exercise of her fiduciary duties to Plaintiff, resulting in damages to her.

201. By failing to take actions for the benefit of Plaintiff, a ward at the time, including but not limited to: (a) failing to seek Plaintiff's removal from Somerset's facility located in Tavares, Florida; (b) mismanagement of Plaintiff's funds in making payments to Somerset after its wrongful imprisonment of Plaintiff; (c) failing to honor and recognize the rights that Plaintiff expressly retained pursuant to court order, including but not limited to, the right to determine her own place of residence; (d) disposing of Plaintiff's assets and personal belongings and the assets and personal belongings of her husband that she would have inherited; and (e) failing to honor and recognize Plaintiff's wishes securing her release from the Somerset facility and allowing her to leave the State of Florida.

202.    At all material times, Nagel, as counsel for the guardian of Plaintiff, owed duties to Plaintiff and were involved and participated in Leininger's actions or inactions, resulting in the above described damage.

203.    As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Nagel for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT VIII – BREACH OF FIDUCIARY DUTY AGAINST NAGEL, P.A.

204.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

205.    Nagel, P.A. represented Leininger, in her capacity as guardian for Plaintiff, in connection with the limited guardianship that was established in December, 2015.

206.    Counsel for Leininger, while she was acting as guardian for Plaintiff, owed similar duties to Plaintiff and was fully aware that the work she was doing for Leininger, as guardian of Plaintiff, was for the benefit of the Plaintiff.

207.    Nagel, P.A. as counsel for Leininger, was negligent and reckless in the exercise of her fiduciary duties to Plaintiff, resulting in damages to her.

208.    By failing to take actions for the benefit of Plaintiff, a ward at the time, including but not limited to: (a) failing to seek Plaintiff's removal from Somerset's facility located in

Tavares, Florida; (b) mismanagement of Plaintiff's funds in making payments to Somerset after its wrongful imprisonment of Plaintiff; (c) failing to honor and recognize the rights that Plaintiff expressly retained pursuant to court order, including but not limited to, the right to determine her own place of residence; (d) disposing of Plaintiff's assets and personal belongings and the assets and personal belongings of her husband that she would have inherited; and (e) failing to honor and recognize Plaintiff's wishes securing her release from the Somerset facility and allowing her to leave the State of Florida.

209.     At all material times, Nagel P.A., as counsel for the guardian of Plaintiff, owed duties to Plaintiff and were involved and participated in Leininger's actions or inactions, resulting in the above described damage.

210.     As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Nagel, P.A. for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

### COUNT IX – BREACH OF FIDUCIARY DUTY AGAINST WAUGH

211.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

212.     Waugh represented Plaintiff in her guardianship proceedings.

213.    Counsel for Plaintiff owed a duty of reasonable care and loyalty to Plaintiff.

214.    Waugh as counsel for Plaintiff, was negligent and reckless in the exercise of his fiduciary duties to Plaintiff, resulting in damages to her.

215.    By failing to take actions for the benefit of Plaintiff, a ward at the time, including but not limited to: (a) failing to seek Plaintiff's removal from Somerset's facility located in Tavares, Florida; (b) failing to attack the mismanagement of Plaintiff's funds in making payments to Somerset after its wrongful imprisonment of Plaintiff; (c) failing to honor and recognize the rights that Plaintiff expressly retained pursuant to court order, including but not limited to, the right to determine her own place of residence; (d) failing to attack the guardian's disposing of Plaintiff's assets and personal belongings and the assets and personal belongings of her husband that she would have inherited; and (e) failing to honor and recognize Plaintiff's wishes securing her release from the Somerset facility and allowing her to leave the State of Florida.

216.    As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Waugh for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT X – BREACH OF FIDUCIARY DUTY AGAINST WAUGH LAW

217.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

218.    Waugh Law represented Plaintiff in her guardianship proceedings.

219.    Counsel for Plaintiff owed a duty of reasonable care and loyalty to Plaintiff.

220.    Waugh Law as counsel for Plaintiff, was negligent and reckless in the exercise of his fiduciary duties to Plaintiff, resulting in damages to her.

221.    By failing to take actions for the benefit of Plaintiff, a ward at the time, including but not limited to: (a) failing to seek Plaintiff's removal from Somerset's facility located in Tavares, Florida; (b) failing to attack the mismanagement of Plaintiff's funds in making payments to Somerset after its wrongful imprisonment of Plaintiff; (c) failing to honor and recognize the rights that Plaintiff expressly retained pursuant to court order, including but not limited to, the right to determine her own place of residence; (d) failing to attack the guardian's disposing of Plaintiff's assets and personal belongings and the assets and personal belongings of her husband that she would have inherited; and (e) failing to honor and recognize Plaintiff's wishes securing her release from the Somerset facility and allowing her to leave the State of Florida.

222.    As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Waugh Law for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of

costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

### **COUNT XI – BREACH OF FIDUCIARY DUTY AGAINST ROGERS**

223.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

224.    Rogers represented Plaintiff in her guardianship proceedings.

225.    Counsel for Plaintiff owed a duty of reasonable care and loyalty to Plaintiff.

226.    Rogers as counsel for Plaintiff, was negligent and reckless in the exercise of his fiduciary duties to Plaintiff, resulting in damages to her.

227.    Rogers by representing Plaintiff and then switching his representation to a guardianship that was materially adverse to Plaintiff was a breach of his duty of loyalty to the Plaintiff.

228.    Specifically, Rogers failed to provide representation in accordance with Plaintiff's interests during her guardianship proceeding in the following ways: (a) failing to take into consideration Doris's objectives; (b) failing to support Doris's competency when the medical evidence available, and for which he charged Doris indicated that she was competent; (c) representing to the court that Doris was doing well in Somerset, including the failure to ascertain or report any of the injuries Doris sustained at Somerset; (d) collaborating with Doris's opponents in support of removing her rights and forcing her to stay in Somerset; (e) changing representation from Doris to her husband without a conflict waiver, and diverting Doris's personal assets, income and marital assets into Neal's guardianship estate; (f) failing to report to his client in any manner during the proceedings or to provide any legal advice to aid his client in

any material respect; (g) making misrepresentations to the court concerning Plaintiff's capacity; (h) making misrepresentations to Plaintiff and the court concerning his objectives in the case; and (i) making misrepresentations to the court concerning the prospect of exploitation by the Carriers from whom he accepted payment.

229.     As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Rogers for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## <u>COUNT XII – BREACH OF FIDUCIARY DUTY AGAINST GAYLORD & ROGERS</u>

230.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

231.     Gaylord & Rogers represented Plaintiff in her guardianship proceedings.

232.     Counsel for Plaintiff owed a duty of reasonable care and loyalty to Plaintiff.

233.     Gaylord & Rogers as counsel for Plaintiff, was negligent and reckless in the exercise of his fiduciary duties to Plaintiff, resulting in damages to her.

234.     Gaylord & Rogers by representing Plaintiff and then switching his representation to a guardianship that was materially adverse to Plaintiff was a breach of his duty of loyalty to the Plaintiff.

235.   Specifically, Gaylord & Rogers failed to provide representation in accordance with Plaintiff's interests during her guardianship proceeding in the following ways: (a) failing to take into consideration Doris's objectives; (b) failing to support Doris's competency when the medical evidence available, and for which he charged Doris indicated that she was competent; (c) representing to the court that Doris was doing well in Somerset, including the failure to ascertain or report any of the injuries Doris sustained at Somerset; (d) collaborating with Doris's opponents in support of removing her rights and forcing her to stay in Somerset; (e) changing representation from Doris to her husband without a conflict waiver, and diverting Doris's personal assets, income and marital assets into Neal's guardianship estate; (f) failing to report to his client in any manner during the proceedings or to provide any legal advice to aid his client in any material respect; (g) making misrepresentations to the court concerning Plaintiff's capacity; (h) making misrepresentations to Plaintiff and the court concerning his objectives in the case; and (i) making misrepresentations to the court concerning the prospect of exploitation by the Carriers from whom he accepted payment.

236.   As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Gaylord & Rogers for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XIII – PROFESSIONAL NEGLIGENCE AGAINST NAGEL

237.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

238.    Nagel represented Leininger, in her capacity as guardian for Plaintiff, in connection with the limited guardianship that was established in December, 2015 and was paid and employed by Plaintiff.

239.    Nagel owed a duty to provide reasonable legal representation meeting the standard of care in her community to the Plaintiff.

240.    Nagel was negligent and reckless in the exercise of duties to Plaintiff, resulting in damages to her.

241.    Nagel fell below the standard of care for a lawyer in her community by: (a) failing to seek Plaintiff's removal from Somerset's facility located in Tavares, Florida; (b) mismanagement of Plaintiff's funds in making payments to Somerset after its wrongful imprisonment of Plaintiff; (c) failing to honor and recognize the rights that Plaintiff expressly retained pursuant to court order, including but not limited to, the right to determine her own place of residence; (d) disposing of Plaintiff's assets and personal belongings and the assets and personal belongings of her husband that she would have inherited; and (e) failing to honor and recognize Plaintiff's wishes securing her release from the Somerset facility and allowing her to leave the State of Florida.

242.    At all material times, Nagel, as counsel for the guardian of Plaintiff, owed duties to Plaintiff and were involved and participated in Leininger's actions or inactions, resulting in the above described damage.

243.    As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Nagel for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XIV – PROFESSIONAL NEGLIGENCE AGAINST NAGEL, P.A.

244.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

245.    Nagel, P.A. represented Leininger, in her capacity as guardian for Plaintiff, in connection with the limited guardianship that was established in December, 2015 and was paid and employed by Plaintiff.

246.    Nagel, P.A. owed a duty to provide reasonable legal representation meeting the standard of care in her community to the Plaintiff.

247.    Nagel, P.A. was negligent and reckless in the exercise of duties to Plaintiff, resulting in damages to her.

248.    Nagel, P.A. fell below the standard of care for a lawyer in her community by: (a) failing to seek Plaintiff's removal from Somerset's facility located in Tavares, Florida; (b) mismanagement of Plaintiff's funds in making payments to Somerset after its wrongful imprisonment of Plaintiff; (c) failing to honor and recognize the rights that Plaintiff expressly retained pursuant to court order, including but not limited to, the right to determine her own

place of residence; (d) disposing of Plaintiff's assets and personal belongings and the assets and personal belongings of her husband that she would have inherited; and (e) failing to honor and recognize Plaintiff's wishes securing her release from the Somerset facility and allowing her to leave the State of Florida.

249.    At all material times, Nagel, P.A., as counsel for the guardian of Plaintiff, owed duties to Plaintiff and were involved and participated in Leininger's actions or inactions, resulting in the above described damage.

250.    As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Nagel, P.A. for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XV – PROFESSIONAL NEGLIGENCE AGAINST WAUGH

251.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

252.    Waugh was employed as counsel by Plaintiff.

253.    Waugh owed a duty to provide reasonable legal representation meeting the standard of care in his community to the Plaintiff.

254.   Waugh was negligent and reckless in the exercise of duties to Plaintiff, resulting in damages to her.

255.   Waugh fell below the standard of care for a lawyer in his community by: (a) failing to seek Plaintiff's removal from Somerset's facility located in Tavares, Florida; (b) mismanagement of Plaintiff's funds in making payments to Somerset after its wrongful imprisonment of Plaintiff; (c) failing to honor and recognize the rights that Plaintiff expressly retained pursuant to court order, including but not limited to, the right to determine her own place of residence; (d) disposing of Plaintiff's assets and personal belongings and the assets and personal belongings of her husband that she would have inherited; and (e) failing to honor and recognize Plaintiff's wishes securing her release from the Somerset facility and allowing her to leave the State of Florida.

256.   As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Waugh for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

### COUNT XVI – PROFESSIONAL NEGLIGENCE AGAINST WAUGH LAW

257.   Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

258.   Waugh Law was employed as counsel by Plaintiff.

259.    Waugh Law owed a duty to provide reasonable legal representation meeting the standard of care in its community to the Plaintiff.

260.    Waugh Law was negligent and reckless in the exercise of duties to Plaintiff, resulting in damages to her.

261.    Waugh Law fell below the standard of care for a lawyer in its community by: (a) failing to seek Plaintiff's removal from Somerset's facility located in Tavares, Florida; (b) mismanagement of Plaintiff's funds in making payments to Somerset after its wrongful imprisonment of Plaintiff; (c) failing to honor and recognize the rights that Plaintiff expressly retained pursuant to court order, including but not limited to, the right to determine her own place of residence; (d) disposing of Plaintiff's assets and personal belongings and the assets and personal belongings of her husband that she would have inherited; and (e) failing to honor and recognize Plaintiff's wishes securing her release from the Somerset facility and allowing her to leave the State of Florida.

262.    As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Waugh Law for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

### COUNT XVII – PROFESSIONAL NEGLIGENCE AGAINST ROGERS

263.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

264.     Rogers was employed as counsel by Plaintiff.

265.     Rogers owed a duty to provide reasonable legal representation meeting the standard of care in his community to the Plaintiff.

266.     Rogers was negligent and reckless in the exercise of duties to Plaintiff, resulting in damages to her.

267.     Rogers fell below the standard of care for a lawyer in his community by breaching his duty of loyalty to his client, and taking on representation of an adverse party to her detriment.

268.     Specifically, Rogers failed to provide representation in accordance with Plaintiff's interests during her guardianship proceeding in the following ways: (a) failing to take into consideration Doris's objectives; (b) failing to support Doris's competency when the medical evidence available, and for which he charged Doris indicated that she was competent; (c) representing to the court that Doris was doing well in Somerset, including the failure to ascertain or report any of the injuries Doris sustained at Somerset; (d) collaborating with Doris's opponents in support of removing her rights and forcing her to stay in Somerset; (e) changing representation from Doris to her husband without a conflict waiver, and diverting Doris's personal assets, income and marital assets into Neal's guardianship estate; (f) failing to report to his client in any manner during the proceedings or to provide any legal advice to aid his client in any material respect; (g) making misrepresentations to the court concerning Plaintiff's capacity; (h) making misrepresentations to Plaintiff and the court concerning his objectives in the case;

and (i) making misrepresentations to the court concerning the prospect of exploitation by the Carriers from whom he accepted payment.

269.    As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Rogers for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XVIII – PROFESSIONAL NEGLIGENCE AGAINST GAYLORD & ROGERS

270.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

271.    Gaylord & Rogers was employed as counsel by Plaintiff.

272.    Gaylord & Rogers owed a duty to provide reasonable legal representation meeting the standard of care in its community to the Plaintiff.

273.    Gaylord & Rogers was negligent and reckless in the exercise of duties to Plaintiff, resulting in damages to her.

274.    Gaylord & Rogers fell below the standard of care for a lawyer in its community by breaching his duty of loyalty to his client, and taking on representation of an adverse party to her detriment.

275.    Specifically Gaylord & Rogers fell below the standard of care in the following ways: (a) failing to take into consideration Doris's objectives; (b) failing to support Doris's

competency when the medical evidence available, and for which he charged Doris indicated that she was competent; (c) representing to the court that Doris was doing well in Somerset, including the failure to ascertain or report any of the injuries Doris sustained at Somerset; (d) collaborating with Doris's opponents in support of removing her rights and forcing her to stay in Somerset; (e) changing representation from Doris to her husband without a conflict waiver, and diverting Doris's personal assets, income and marital assets into Neal's guardianship estate; (f) failing to report to his client in any manner during the proceedings or to provide any legal advice to aid his client in any material respect; (g) making misrepresentations to the court concerning Plaintiff's capacity; (h) making misrepresentations to Plaintiff and the court concerning his objectives in the case; and (i) making misrepresentations to the court concerning the prospect of exploitation by the Carriers from whom he accepted payment.

276.    As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Gaylord & Rogers for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XIX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST LEININGER

277.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

278.    The conduct of Leininger was intentional or reckless in its refusal to permit Plaintiff to leave Somerset despite repeated requests.

279.    Plaintiff's emotional distress from her detention was completely foreseeable under the circumstances described herein.  Leininger either intended the wrongful result of her behavior or should have reasonably foreseen that Plaintiff's severe emotional distress was certain or substantially certain to result. In the alternative, Leininger acted recklessly and in deliberate disregard for the high degree of probability that Plaintiff's severe emotional distress would follow as a result of her conduct.

280.    The conduct of Leininger was extreme and outrageous beyond all bounds of human decency, so as to be deemed utterly intolerable in a civilized community. Plaintiff was held against her will and forced to remain at Somerset's facility in Tavares, Florida, for nearly a full year. Leininger also sold or gave away all of Plaintiff's assets and personal possessions leaving her penniless with only the clothes on her back.  Leininger, in essence, took every conceivable action against the ward who she was supposed to be duty bound to protect. Leininger's conduct in the instant case is antithetical to what is tolerable in a civilized community because no civilized community would permit any aspect of Leininger's conduct.

281.    Leininger intentionally or recklessly caused Plaintiff to suffer severe emotional distress through her unlawful detention.

282.   As a direct and proximate cause of the foregoing, Plaintiff has suffered mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Leininger for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including, but not limited to, punitive damages, interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XX – PROFESSIONAL NEGLIGENCE AGAINST SCHULTE

283.   Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

284.   Schulte represented the petitioner in the proceeding to determine Doris's incapacity and to establish a plenary guardianship for Doris. In her capacity as counsel for the petitioner, in connection with establishing Plaintiff's guardianship, Schulte was paid by Plaintiff for her services.

285.   Schulte owed a duty to provide reasonable legal representation meeting the standard of care in her community to the Plaintiff.

286.   Schulte was negligent and reckless in the exercise of duties to Plaintiff, resulting in damages to her.

287.   Schulte fell below the standard of care for a lawyer in her community by: (a) failing to seek Plaintiff's removal from Somerset's facility located in Tavares, Florida; (b) making material misrepresentations to the court concerning the mental capacity of the Plaintiff; (c) improperly interfacing with the examining committee to determine Plaintiff's incapacity

before a petition had even been filed; (d) disposing of Plaintiff's assets and personal belongings and the assets and personal belongings of her husband that she would have inherited after she changed her representation from representation of the petitioner to counsel for Neal's guardian; and (e) failing conduct proper due diligence concerning the value of Plaintiff's marital property or its status as marital property in selling Plaintiff's assets which were either improperly sold or interfered with Plaintiff's inheritance as sole heir to Neal's estate; and (f) improperly collecting Doris's railroad Social Security distributions into Neal's estate.

288.    At all material times, Schulte, as counsel for the petitioner, owed duties to Plaintiff and was involved and participated in actions or inactions, resulting in the above described damage.

289.    As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Schulte for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XXI – TORTIOUS INTERFERENCE WITH AN EXPECTANCY AGAINST SCHULTE

290.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

291.    Schulte, as counsel for petitioner in Doris's guardianship and as counsel for Neal's guardianship knew that Neal's estate would pass to Doris upon his death.

292.    Schulte interfered with Doris's inheritance as the sole heir to Neal's estate, resulting in damages to her to maintain the assets of Neal's estate in Neal's guardianship at the time of or before his death by selling Neal and Doris's family home and personal property in New York on the day of his death.

293.    As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of Neal's estate of which she was the sole heir.

WHEREFORE, Plaintiff demands judgment against Schulte for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XXII – BREACH OF FIDUCIARY DUTY AGAINST SCHULTE

294.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

295.    Schulte represented the petitioner in the proceeding to determine Doris's incapacity and to establish a plenary guardianship for Doris. In her capacity as counsel for the petitioner, in connection with establishing Plaintiff's guardianship, Schulte was paid by Plaintiff for her services.

296.    Counsel for petitioner in Plaintiff's guardianship proceeding owed a duty of reasonable care and loyalty to Plaintiff.

297.    Schulte as counsel for petitioner and later as counsel for the guardianship of Neal, was negligent and reckless in the exercise of his fiduciary duties to Plaintiff, resulting in damages to her.

298.     Schulte by representing petitioner to establish Plaintiff's guardianship and then switching her representation to a guardianship that was materially adverse to Plaintiff was a breach of his duty of loyalty to the Plaintiff.  Specifically, Schulte's collection of Doris's railroad Social Security income into Neal's guardianship estate, and her sale of marital property violated her duty of loyalty to Plaintiff.

299.     Additionally, Schulte violated her duty of loyalty and care to Plaintiff by making material misrepresentations to the court in Plaintiff's guardianship proceedings to undermine Plaintiff's capacity while collecting hourly fees from Plaintiff at the same time.  Schulte played a significant role in preventing Doris from leaving Somerset, and then an equally significant role in the liquidation and exhaustion of Doris and Neal's assets in favor of the attorneys and professionals involved in the guardianship proceedings.

300.     As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of all of her assets without any remuneration as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Schulte for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XXIII – TORTIOUS INTERFERENCE WITH AN EXPECTANCY AGAINST ROGERS

301.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

302.     Rogers, as counsel for Doris in her guardianship and as counsel for Neal knew that Neal's estate would pass to Doris upon his death.

303.     Rogers interfered with Doris's inheritance as the sole heir to Neal's estate, resulting in damages to her in order to maintain the assets of Neal's estate in Neal's guardianship at the time of or before his death by selling Neal and Doris's family home and personal property in New York on the day of his death.

304.     As a direct and proximate cause of the foregoing, Plaintiff has suffered significant economic losses due to the liquidation of Neal's estate of which she was the sole heir.

WHEREFORE, Plaintiff demands judgment against Rogers for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including but not limited to interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XXIV – FALSE IMPRISONMENT AGAINST HEIMAN

305.      Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

306.     Heiman intentionally confined and/or restrained Plaintiff within the confines of the facility she owned located at 2450 Dora Ave., Tavares, Florida.

307.     Plaintiff requested to leave Somerset, but was instructed that she would not be permitted to leave until she had paid the balance of her outstanding bill.

308.     Plaintiff was physically prevented from leaving Somerset on multiple occasions.

309.     Heiman made material misrepresentations to Plaintiff to convince her that she was not permitted to leave the facility.

310.     During the time Plaintiff was at Somerset, Plaintiff was confined within a bounded area with no reasonable means of safe escape, due to the direct actions of Somerset and its employees.

311.     Heiman and her employees, acting within the regular course and scope of their employment, acted with the purpose of confining Plaintiff, or in the alternative, acted knowing that Plaintiff's confinement was a substantially certain result based upon its conduct.

312.     Plaintiff was fully aware and conscious of her confinement at Heiman's facility at Somerset. On multiple occasions, Plaintiff was informed that she was not allowed to leave the facility and prevented from leaving.

313.     Ultimately, only after the intervention of third parties who threatened Heiman that they would call the police was Plaintiff released from Somerset.

314.     Heiman held Plaintiff at Somerset for nearly a year against her will in the State of Florida, prevented her from seeing her husband, and prevented her from seeing her friends who were outside of the facility.

315.     Heiman additionally made false representations to DCF and the guardianship court to secure payment to Somerset, and to keep Doris in her facility in the interest of pecuniary gain.

316.     Plaintiff was thereafter afraid of the State of Florida.

317.     Plaintiff was also unable to see her husband before he passed.

318.     As a direct and proximate cause of the foregoing, Plaintiff was falsely imprisoned at Somerset's facility and has suffered extreme mental anguish, suffering, emotional distress, anxiety, and loss of freedom and enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Heiman for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including, but not limited to, punitive damages, interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XXV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST HEIMAN

319.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

320.     The conduct of Heiman was intentional or reckless in its refusal to permit Plaintiff to leave Somerset despite repeated requests.

321.     Plaintiff's emotional distress from her detention was completely foreseeable under the circumstances described herein.  Heiman either intended the wrongful result of her behavior or should have reasonably foreseen that Plaintiff's severe emotional distress was certain or substantially certain to result. In the alternative, Heiman acted recklessly and in deliberate disregard for the high degree of probability that Plaintiff's severe emotional distress would follow as a result of her conduct.

322.     The conduct of Heiman was extreme and outrageous beyond all bounds of human decency, so as to be deemed utterly intolerable in a civilized community. Plaintiff was held against her will and forced to remain at Somerset's facility in Tavares, Florida, for nearly a full year.  Heiman lied to Plaintiff, state authorities, and the guardianship court for her own pecuniary gain.  Heiman's conduct in the instant case is antithetical to what is tolerable in a civilized community because no civilized community would permit any aspect of Leininger's conduct.

323.    Heiman intentionally or recklessly caused Plaintiff to suffer severe emotional distress through her unlawful detention.

324.    As a direct and proximate cause of the foregoing, Plaintiff has suffered mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life, which continues to this day.

WHEREFORE, Plaintiff demands judgment against Heiman for actual and compensatory damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including, but not limited to, punitive damages, interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XXVI ELDER EXPLOITATION PURSUANT TO SECTION 825.103, FLORIDA STATUTES AGAINST SOMERSET

325.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

326.    In compliance with Section 772.11, Florida Statutes, on March 11, 2020, Plaintiff provided a written demand to Defendant seeking treble damages for elder exploitation under Sections 8525.102 and 825.103, Florida Statutes.

327.    Defendant knowingly and intentionally unlawfully held Plaintiff against her will, deceived Plaintiff, and exploited Plaintiff financially.

328.    Defendant's exploitation of Plaintiff, an individual over the age of sixty-five (65) is subject to statutory consequences under Section 772.11, Florida Statutes.

329.    All conditions precedent to this claim have been met, and Defendant has failed to accept the demand contained within the civil remedy notice within thirty (30) days.

WHEREFORE, Plaintiff demands judgment against Defendant for statutory treble damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including, but not limited to, punitive damages, interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XXVII ELDER EXPLOITATION PURSUANT TO SECTION 825.103, FLORIDA STATUTES AGAINST LEININGER

330. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

331. In compliance with Section 772.11, Florida Statutes, on March 11, 2020, Plaintiff provided a written demand to Somerset seeking treble damages for elder exploitation under Sections 8525.102 and 825.103, Florida Statutes.

332. Defendant knowingly and intentionally unlawfully held Plaintiff against her will, deceived Plaintiff, and exploited Plaintiff financially.

333. Somerset's exploitation of Plaintiff, an individual over the age of sixty-five (65) is subject to statutory consequences under Section 772.11, Florida Statutes.

334. All conditions precedent to this claim have been met, and Defendant has failed to accept the demand contained within the civil remedy notice within thirty (30) days.

WHEREFORE, Plaintiff demands judgment against Defendant for statutory treble damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including, but not limited to, punitive damages, interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XXVIII ELDER EXPLOITATION PURSUANT TO
## SECTION 825.103, FLORIDA STATUTES AGAINST NAGEL

335.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

336.    In compliance with Section 772.11, Florida Statutes, on March 11, 2020, Plaintiff provided a written demand to Somerset seeking treble damages for elder exploitation under Sections 8525.102 and 825.103, Florida Statutes.

337.    Defendant knowingly and intentionally unlawfully held Plaintiff against her will, deceived Plaintiff, and exploited Plaintiff financially.

338.    Somerset's exploitation of Plaintiff, an individual over the age of sixty-five (65) is subject to statutory consequences under Section 772.11, Florida Statutes.

339.    All conditions precedent to this claim have been met, and Defendant has failed to accept the demand contained within the civil remedy notice within thirty (30) days.

WHEREFORE, Plaintiff demands judgment against Defendant for statutory treble damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including, but not limited to, punitive damages, interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## COUNT XXIX ELDER EXPLOITATION PURSUANT TO
## SECTION 825.103, FLORIDA STATUTES AGAINST ROGERS

340.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 139 above, as if set forth fully herein.

341.   In compliance with Section 772.11, Florida Statutes, on March 11, 2020, Plaintiff provided a written demand to Somerset seeking treble damages for elder exploitation under Sections 8525.102 and 825.103, Florida Statutes.

342.   Defendant knowingly and intentionally unlawfully held Plaintiff against her will, deceived Plaintiff, and exploited Plaintiff financially.

343.   Somerset's exploitation of Plaintiff, an individual over the age of sixty-five (65) is subject to statutory consequences under Section 772.11, Florida Statutes.

344.   All conditions precedent to this claim have been met, and Defendant has failed to accept the demand contained within the civil remedy notice within thirty (30) days.

WHEREFORE, Plaintiff demands judgment against Defendant for statutory treble damages in excess of $75,000.00, exclusive of interest and costs, an award of costs and interest, and such other relief and remedies permitted by law or equity, including, but not limited to, punitive damages, interest, attorneys' fees and costs and such other relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

The Plaintiff, Doris Hadcock, demands a trial by jury on all issues so triable.
Dated this 7th day of August, 2020.

BLEAKLEY BAVOL DENMAN & GRACE

/s/ J. Ronald Denman
J. Ronald Denman, Esq.
Florida Bar No.: 0863475
Grant W. Kindrick, Esq.
Florida Bar No.: 0086950
15170 N. Florida Avenue
Tampa, Florida 33613
Telephone: (813) 221-3759
rdenman@bbdglaw.com
gkindrick@bbdglaw.com
nlafferty@bbdglaw.com
eservice@bbdglaw.com (Counsel for Plaintiff)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of August, 2020, a true and correct copy of the foregoing was served to the below parties via email:

Robin N. Khanal, Esq.
Vanessa A. Braga, Esq.
Quintairos, Prieto, Wood & Boyer, P.A.
255 S. Orange Ave., Suite 900
Orlando, FL 32801
RNK.pleadings@qpwblaw.com
*(Counsel for Jest Operating d/b/a Somerset)*

Michael A. Nardella, Esq.
Nardella & Nardella, PLLC
135 West Central Blvd, Suite 300
Orlando, FL 32801
mnardella@nardellalaw.com
*(Counsel for Christian W. Waugh and Waugh Law, P.A.)*

Phillip S. Smith, Esq.
John D. Metcalf, Esq.
Daniel J. Kersey, Esq.
Matthew D. Black, Esq.
McLin Burnsed
P.O. Box 491357
Leesburg, FL 34749
PhilS@mclinburnsed.com
MattB@mclinsburnsed.com
KeriB@mclinburnsed.com
*(Counsel for Patricia Leininger)*

Pamela Haddock Klavon, Esq.
The Liles Firm, PA.
301 W. Bay Street, Suite 32202
Jacksonville, FL 32202
pklavon@thelilesfirm.com
pwilson@thelilesfirm.com
rgeorge@thelilesfirm.com
*(Counsel for Merideth C. Nagal and Nagal Law, PA)*

Fracnis H. Sheppard, Esq.
Rumberger Kirk
300 South Orange Avenue
Suite 1400
Orlando, FL 32801
fsheppard@rumberger.com
*(Counsel for Michael Rogers and Gaylord & Rogers, LLC)*

/s/ J. Ronald Denman
Attorney