UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**DORIS HADCOCK,**

     **Plaintiff,**

**v.**                                                   **Case No: 5:20-cv-95-Oc-30PRL**

**JEST OPERATING, INC. d/b/a
SOMERSET, PATRICIA R.
LEININGER, MERIDETH C. NAGEL,
MICHAEL J. ROGERS, CHRISTIAN
W. WAUGH, MERIDETH NAGEL, P.A.,
WAUGH LAW, P.A. and GAYLORD &
ROGERS, LLC, ELIZABETH HEIMAN,
and KIMBERLY SCHULTE.**

     **Defendants.**

---

# REPORT AND RECOMMENDATION[1]

     Plaintiff, Doris Hadcock, who is ninety one years old, filed this diversity action against various Defendants related to alleged abuse and financial exploitation that occurred during her guardianship and confinement at Somerset, an assisted living facility in Tavares, Florida. At issue in the instant motions to dismiss are her claims against Michael J. Rogers, and Gaylord & Rogers, LLC, who served as Plaintiff's counsel during the guardianship proceedings, and against Kimberly Schulte, who filed the guardianship petition on behalf of DCF.[2]

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] The other Defendants have filed answers to the Amended Complaint. (Docs. 67, 68, 69, 70, 73)

I.      **Background**[3]

The Amended Complaint alleges a lengthy story beginning on January 28, 2015, when Plaintiff injured her back in her Tavares, Florida home. (Doc. 60, Amended Complaint at ¶ 23). She continued to experience pain and on February 8, 2015, Plaintiff was taken by ambulance to Waterman Hospital where she was treated for a significant back injury. (Id. at ¶ 24). While she was hospitalized, her husband, Neal Hadcock was taken to Somerset's licensed assisted living facility located in Tavares, Florida. (Id. at ¶ 25). After three days in the hospital, Plaintiff was discharged to the Ruleme Center, a rehabilitation facility located in Eustis, Florida for further care and treatment. (Id. at ¶ 26). While at the Ruleme Center, Plaintiff underwent cognitive testing which showed no significant cognitive impairment. (Id. at ¶27).

On March 23, 2015, upon completion of her rehabilitation treatment, Plaintiff was transferred from the rehabilitation center to Somerset by Somerset's employees allegedly without Plaintiff's consent or court order, and contrary to Plaintiff's stated desire to be discharged to her home. (Id. at ¶¶ 28-30). Once at Somerset, Plaintiff claims she was surprised to find her husband Neal was also there. (Id. at ¶ 32). And while Plaintiff told the Somerset staff that she did not want to be held at the facility, she was not permitted to leave. (Id. at ¶33). Plaintiff contacted her long-time friends, Shelley and Keven Carrier and asked for their help in getting her released. (Id. at ¶36). Plaintiff requested information regarding the basis for her and Neal's transfer to Somerset and was falsely told that: (a) "You cannot leave until you pay your bill;" (b) "You cannot move back to New York; you are a ward of the State of Florida;" and (c) "The Carriers are not your blood relatives, and you cannot leave with them."

---

[3] The background "facts" are taken from the Amended Complaint (Doc. 60) and assumed to be true for purposes of this motion to dismiss.

Somerset then separated Plaintiff from her husband and forced Plaintiff to share a room with someone that she did not know. (Id. at ¶¶ 38-9). She and Neal were not allowed to eat meals together and at some point Neal was placed in "lock -down," which further restricted his freedom of movement. (Id. at ¶¶42-44). Plaintiff alleges that as a result of her constant pleas for release, a Somerset staff physician ordered Doris and Neal to be medicated and sedated due to "anxiety." (Id. at ¶45).

In July 2015, the Carriers attempted to intervene on behalf of Mr. and Mrs. Hadcock to seek their release. (*Id.* at ¶49). On July 24, 2015, Plaintiff and Neal requested that the Carriers transport them to execute health care surrogate documents and powers of attorney to facilitate Plaintiff and her husband's removal from Somerset and their return to New York. (*Id.* at ¶50) Somerset then contacted the Florida Department of Children and Families ("DCF") to initiate an investigation into the Carriers to allegedly prevent Plaintiff and Neal from leaving the facility and returning to New York. (*Id.* at ¶ 51). On August 11, 2015, DCF began its investigation. *(Id.* at ¶ 46). According to Plaintiff, DCF ignored her requests to leave Florida and go to New York, and through attorney, Kimberly Schulte, initiated guardianship proceedings to have professional guardians appointed by the State of Florida for Plaintiff and her husband. (*Id.* at ¶ 57).

On August 12, 2015, the Carriers paid Defendant Michael J. Rogers, a Florida attorney, of Defendant Gaylord & Rogers, LLC to represent Plaintiff and Neal in the Florida proceedings. (*Id.* at ¶ 58). He ultimately provided representation to Plaintiff as her court appointed attorney from August 13, 2015 through December 2015. (*Id.* at ¶ 60). He was formally appointed as Plaintiff's counsel on August 27, 2015. (*Id.*). Rogers was paid out of Plaintiff's funds through the guardianship for his services. (*Id.* at ¶ 61). On August 13, 2015, Rogers advised the Carriers that

he was confident that Plaintiff did not need a guardian and that the matter would be resolved within thirty days. (*Id*. at ¶ 62-63).

On August 20, 2015, Schulte filed a petition in state court for appointment of a plenary guardian, seeking to remove Plaintiff's rights, have her deemed incapacitated, and to have Dorothy Ann Varner appointed as Plaintiff's guardian. (*Id.* at ¶ 64). According to Plaintiff, Schulte falsely represented in the petition that Doris suffered from dementia. (*Id*.) Plaintiff alleges that prior to the petition being filed, Rogers conferred with Schulte, Heiman, and Dorothy Ann Varner on four dates "in a joint effort to have Doris's rights taken away, have Doris detained in Heiman's facility at Somerset, and have Dorothy Ann Varner appointed as Doris's guardian" (*Id* at ¶ 66). The day before the petition was filed, Schulte billed Doris for contacting Dr. Thomas Sawyer and Barbara Priess concerning Doris—both of whom became two of three members of Doris's examining committee. (*Id* at ¶ 67).

On October 6, 2015, Neal was placed into a guardianship. (*Id* at ¶ 69). On December 4, 2015, Attorney Christian Waugh of Waugh Law, P.A. substituted in as Plaintiff's counsel. (*Id*. at ¶ 70; Doc. 72-12).

In December 2015, a capacity proceeding was initiated in Lake County. (*Id* at ¶ 71). On December 14, 2015, the court placed Plaintiff in a limited guardianship and appointed Defendant Patricia Leininger as the limited guardian. Leininger retained Attorney Merideth C. Nagel of Merideth Nagel, P.A., as guardian counsel. (*Id.* at ¶¶ 72-73). Although the proceedings sought to have Plaintiff declared completely incapacitated, she retained certain rights including the right to determine her residency. (*Id.* at ¶ 72).

On December 16, 2015, Rogers sought fees from the court for the work he performed for Doris. Plaintiff alleges that although Rogers billed Doris to review the report of Dr. Karen Estill—

who diagnosed Doris with a "mild neuro-cognitive disorder"—Rogers incorrectly described Doris as having dementia. (*Id.* at ¶ 67). He stated that she was vulnerable to exploitation and not capable of managing her health care or finances and needed supervision and assistance with many areas of daily living. (*Id.* at ¶ 77). According to Rogers, the benefit he provided was having Doris determined to have "total incapacity." (*Id.* at ¶ 78). And Rogers advised the court that Doris would continue to reside in Somerset. "which satisfactorily provides for the ward's social and physical needs. However, Plaintiff alleges that during the time of Rogers' representation, she had advised Rogers, Heiman, and Somerset that she wanted to leave the facility. (*Id.* at ¶ 82). According to Plaintiff, Rogers only spoke with her twice during his four-month representation; he failed to apprise her of the guardianship proceedings; and, he took no action to remove her from Somerset, to contest the guardianship, or establish her competency. (*Id.* at ¶ 88-91). Plaintiff alleges that Rogers worked against her interests with Schulte, Heiman, and Varner to establish a guardianship, have her deemed incapacitated, and detained at Somerset. (*Id.* at 92-94).

On March 5, 2016, Plaintiff was discharged from Somerset. (*Id.* at ¶ 110) She left Neal at Somerset and returned to the State of New York with her friends, the Carriers. (*Id.* at ¶ 112-113). Approximately a month after Plaintiff returned to New York, Neal died. (*Id.* at ¶ 114). Plaintiff alleges that Rogers, as Neal's court appointed counsel and Schulte as counsel for Neal's guardianship, sold real property and deducted social security income, to which Plaintiff was entitled (at least in part), into the guardianship estate. On September 19, 2019, Plaintiff's capacity was restored. (*Id.* at ¶ 119).

From the time Doris left for New York until her capacity was restored, she alleges that she suffered significant losses. After Neal died, Leininger sought to be appointed as the personal representative of Neal's estate as the guardian of Plaintiff, who was designated by her husband in

his will to be the personal representative. (*Id*. at ¶122). Nagel was hired by Leininger to be her counsel as personal representative. (*Id*.) Plaintiff alleges that Leininger liquidated every single asset and personal possession that Plaintiff and Neal had accumulated over their entire lives to pay the fees of Somerset and the fees incurred by Leininger and Nagel in connection with the guardianship of Plaintiff, Neal, and for being the personal representative of Neal's estate. (*Id.* at ¶ 123). Plaintiff alleges that Leininger refused to provide Doris with any money while living in New York to meet her basic needs. (*Id*. at ¶ 127).

### II.   Standard

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). In considering the sufficiency of the complaint, the court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Id.*

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in *Ashcroft* and *Twombly*. First, "eliminate any allegations in the complaint that are merely legal

conclusions," and then, "where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1949). In applying these principles, the Court can infer "'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 129 S.Ct. at 1951-52).

### III.  Discussion

### A.  Michael J. Rogers and Gaylord & Rogers, LLC's Motion to Dismiss (Doc. 72)

This is Plaintiff's second attempt at alleging claims against Attorney Rogers and his firm, Gaylord & Rogers, LLC (collectively referred to as the "Rogers Defendants") for professional negligence and breach of fiduciary duty related to their representation of Plaintiff in the guardianship proceedings. Plaintiff's claims in the initial complaint were dismissed because the allegations were vague and lacked factual support. (Docs. 54, 59). Now, in the amended complaint, Plaintiff has alleged these claims in much greater detail. (Doc. 60, Counts XI, XII, XVII, XVIII).

A claim of professional negligence is based on a breach of an attorney's duty of care. *Weaver*, 2012 WL 3065362, at \*9. The duty of care "requires an attorney to have the knowledge and skill necessary to confront the circumstances of each case." *Id.* The elements of professional negligence under Florida law are: "(1) existence of a legal duty, (2) breach of the duty, (3) proximate causation, and (4) actual loss." *NCM of Collier County, Inc. v. Durkin Group*, L.L.C., No. 2:11–cv–558, 2012 WL 2389756, at \*2 (M.D. Fla. June 25, 2012) (citing *Curd v. Mosaic Fertilizer, L.L.C.,* 39 So.3d 1216, 1227 (Fla. 2010)). As a subset of professional negligence, a claim for breach of fiduciary duty is based on a breach of the duty of loyalty. *Gracey v. Eaker,* 837 So.2d 348, 353 (Fla. 2002); *Resolution Trust Corp., v. Holland & Knight,* 832 F.Supp. 1528, 1531

(S.D. Fla. 1993). The duty of loyalty confers upon an attorney a "'duty at all times to represent his client and handle his client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity.'" *Weaver v. Mateer & Harbert, P.A.*, No. 5:09-CV-514-OC-34TBS, 2012 WL 3065362, at *1 (M.D. Fla. July 27, 2012) *aff'd,* 523 F. App'x 565 (11th Cir. 2013) (quoting *Resolution Trust Corp.*, 832 F. Supp. 1530-31). "Generally, an attorney breaches the duty of loyalty when the attorney obtains a personal advantage from the client or when there are circumstances that create adversity to the client's interest." *Resolution Tr. Corp. v. Holland & Knight*, 832 F. Supp. 1528, 1531 (S.D. Fla. 1993)

Plaintiff's claims for professional negligence and breach of fiduciary duty are premised on the same factual allegations. Contrary to the initial complaint, Plaintiff now has alleged numerous specific ways in which the Rogers Defendants purportedly breached their duty to Plaintiff by working against her interests in the guardianship proceedings including, *inter alia*: failing to keep Plaintiff informed during the guardianship proceedings; making no challenge to the guardianship; not supporting her claim for competency despite medical evidence showing that she was competent; failing to report concerns with Plaintiff's care at Somerset; and failing to honor Plaintiff's wishes to be released from Somerset. Plaintiff alleges that as a result of these breaches, she was deemed partially incapacitated, placed in a limited guardianship, and detained at Somerset for months against her wishes, which caused damages including economic losses due to the liquidation of her assets to pay Somerset costs and counsel's fees, as well as mental anguish, suffering, emotional distress, anxiety, and loss of enjoyment of life. These allegations are sufficient to overcome the motion to dismiss.

The Rogers Defendants point to records from the underlying guardianship proceedings to show that they complied with their duty under the law. And perhaps they did. However, that is not

properly resolved at this point in the case. Accordingly, the motion to dismiss should be denied as to the claims against the Roger Defendants for professional negligence and breach of fiduciary duty (Counts XI, XII, XVII, XVIII).

In the amended complaint, Plaintiff also asserts new claims against Attorney Rogers for tortious interference with an expectancy (Count XXIII) and elder exploitation (Count XXIX). Attorney Rogers moved to dismiss both counts and Plaintiff failed to raise any objection in her response to the dismissal of either count.

In order to state a claim for tortious interference with an expectancy, plaintiff must allege: "(1) the existence of an expectancy; (2) intentional interference with the expectancy through tortious conduct such as duress, fraud, or undue influence; (3) causation; and (4) damages." *Nationwide Life Ins. Co. v. Perry,* No. 9:12-cv-80194, 2012 WL 4838986, at *4 (S.D. Fla. Oct. 11, 2012). Here, Plaintiff alleges that Attorney Rogers interfered with Doris's inheritance "by selling Neal and Doris's family home and personal property in New York on the day of his death." (Doc. 60 at ¶303). However, Plaintiff fails to identify any tort or tortious conduct committed by Attorney Rogers– it is not clear whether she is proceeding under a theory encompassing duress, fraud, undue influence, or something else. Accordingly, and in the absence of any opposition from Plaintiff, Count XXIII should be dismissed.

Likewise, Plaintiff's claim against Attorney Rogers for elder exploitation (Count XXIX) should be dismissed. Plaintiff fails to allege that she provided Attorney Rogers with the pre-suit notice required by Florida Statutes § 772.11. Moreover, the allegations in Count XXIX are focused entirely on Somerset, and do not even mention Attorney Rogers. Accordingly, and in the absence of any objection from Plaintiff, Count XXIX should be dismissed.

**B. Kimberly Schulte's Motion to Dismiss (Doc. 76)**

Plaintiff has attempted to assert claims against Schulte for professional negligence (Count XX), breach of fiduciary duty (Count XXII), and tortious interference with an expectancy (Count XXI). These claims arise out of Schulte's representation of DCF as the petitioner in Plaintiff's guardianship proceedings and then her representation of Neal's guardian, Dorothy Ann Varner.

"To bring a legal malpractice action, the plaintiff must either be in privity with the attorney, wherein one party has a direct obligation to another, or, alternatively, the plaintiff must be an intended third-party beneficiary." *See Espinosa v. Sparber*, 612 So. 2d 1378, 1380 (Fla. 1993). Here, Plaintiff alleges that in the guardianship proceedings Schulte represented the petitioner DCF—not Plaintiff—and thus, no privity of contract is asserted. Accordingly, Plaintiff must allege that Plaintiff was an intended third-party beneficiary.

To that end, Plaintiff relies on Florida cases finding that the third-party beneficiary exception permits a ward to sue the attorney for the guardian, who was neither retained by nor working for the Plaintiff. *See Bivins v. Rogers*, No. 15-81298-CIV-MARRA/MATTHEWMAN, 2017 WL 5526874, *3 (S.D. Fla. June 1, 2017) (citing Fla. AGO 96-94, 1996 WL 680981 (Fla. A.G. Nov. 20, 1996) and *Saadeh v. Connors*, 166 So.3d 959, 964 (Fla. App. Ct. 2015)). As the *Saadeh* court explained, "[s]ince the ward is the intended beneficiary of the guardianship, an attorney who represents a guardian of a person adjudicated incapacitated and who is compensated from the ward's estate for such services owes a duty of care to the ward as well as to the guardian." *Saadeh*, 166 So.3d at 964 (*quoting* Fla. AGO 96-94, 1996 WL 680981). This authority, however, does not support the instant action—i.e., the ability of a ward to sue the petitioner's counsel from the underlying guardianship proceedings for professional negligence. Plaintiff's argument to the contrary is undercut by the guardianship statutes which specifically require the Court to appoint an attorney to represent the alleged incapacitated person upon the filing of a petition to determine

incapacity. § 744.331(2)(b), Fla. Stat. (2009). Indeed, in this case, once Schulte filed the petition to determine Plaintiff's incapacity, the court appointed Rogers to represent Plaintiff's interests.

Accordingly, there is simply no basis to conclude that Schulte—who owed a duty of care to her client, DCF—also owed a duty of care to Plaintiff. Likewise, Plaintiff's claim against Schulte for breach of fiduciary duty is due to be dismissed because Plaintiff has failed to allege any facts suggesting that Schulte in representing DCF owed Plaintiff a duty of loyalty. Plaintiff's allegation that Schulte was paid fees from Plaintiff's assets (Doc. 60 at ¶81) is insufficient standing alone to give rise to a legal duty.[4] Accordingly, Plaintiff's claims against Schulte for professional negligence (Count XX) and breach of fiduciary duty (Count XXII) should be dismissed.

Finally, Plaintiff attempts to assert a claim against Schulte for tortious interference with an expectancy (Count XXI). As discussed above, plaintiff must allege: "(1) the existence of an expectancy; (2) intentional interference with the expectancy through tortious conduct such as duress, fraud, or undue influence; (3) causation; and (4) damages." *Nationwide Life Ins. Co. v. Perry,* No. 9:12-cv-80194, 2012 WL 4838986, at *4 (S.D. Fla. Oct. 11, 2012).

As an initial matter, it unclear whether Plaintiff is proceeding under a theory encompassing duress, fraud, undue influence, or some other tortious conduct. At best, Plaintiff alleges that Schulte knew that Neal's estate would pass to Plaintiff upon his death; that she interfered with Doris's inheritance "by selling Neal and Doris's family home and personal property in New York on the day of his death" (Doc. 60 at ¶292); that she diverted Neal's estate assets away from Plaintiff and sold assets for diminished values (*Id.* at ¶¶ 115-16); and that she diverted Plaintiff's railroad social security payments to Neal's estate. (*Id.*). Although not required to plead a tortious interference with expectancy claim with heightened particularity, Plaintiff still must plead it with

---

[4] Florida Statute §744.331(7) provides that some fees associated with the guardianship proceedings will be paid from the property of the ward.

sufficient detail, which she has not done. *See Miller v. Ascom Holding AG*, Case No. 8:19-cv-02582-T-60CPT 2019 WL 6910157, at * 2 (M.D. Fla. Dec. 19, 2019). Accordingly, Count XXI should be dismissed.

### IV.    Conclusion

In summary, Michael J. Rogers and Gaylord & Rogers, LLC's Motion to Dismiss (Doc. 72) should be granted to the extent that Plaintiff's claims against Attorney Rogers in the Amended Complaint for tortious interference with an expectancy (Count XXIII) and elderly exploitation (Count XXIX) should be dismissed. However, Plaintiff's claims against the Rogers Defendants for professional negligence (Counts XVII and XVIII) and breach of fiduciary duty (Counts XI and XII) should proceed.

Kimberly Schulte's Motion to Dismiss (Doc. 76) should be granted in its entirety and Counts XX (professional negligence), XXI (tortious interference with an expectancy), and XXII (breach of fiduciary duty) of the Amended Complaint should be dismissed.

Recommended in Ocala, Florida on December 18, 2020.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy