**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

SHELLEY CARRIER, as the Personal
Representative of the Estate of DORIS
HADCOCK,

        Plaintiff,

                                 CASE NO.: 5:20-cv-00095-JSM-PRL

v.

JEST   OPERATING,   INC.   d/b/a
SOMERSET, PATRICIA R. LEININGER,
MEREDITH   C.   NAGEL,   MICHAEL   J.
ROGERS,   CHRISTIAN   W.   WAUGH,
MERIDETH   NAGEL,   P.A.,   WAUGH
LAW, P.A., and GAYLORD & ROGERS,
LLC,

        Defendant(s).

_____/

**PATRICIA R. LEININGER'S MOTION FOR ENTITLEMENT TO**
**ATTORNEY'S FEES AND FOR SANCTIONS AND INCORPORATED**
**MEMORANDUM OF LAW**

Defendant, PATRICIA R. LEININGER ("Leininger"), pursuant to Federal

Rule of Civil Procedure 54, Local Rule 7.01 of the United States District Court for the

Middle District of Florida, and sections 768.79 and 772.11, Florida Statutes, hereby

moves for entry of an order determining that Leininger is entitled to an award of

attorneys' fees, costs, and expenses against Plaintiff, Shelley Carrier, as the Personal

Representative of the Estate of DORIS HADCOCK ("Plaintiff"),[1] and an Order

imposing sanctions upon Plaintiff's Counsel and Plaintiff's Counsels' firm, jointly and

---

[1] This Motion will collectively refer to Doris Hadcock, in her actions as a litigant, and Shelley Carrier, as the Personal Representative of the Estate of Doris Hadcock, as "Plaintiff." References to Hadcock as a non-litigant will utilize the name "Hadcock."

severally, pursuant to both 28 U.S.C. §1927 and this Court's inherent authority, and in support thereof states:

## INTRODUCTION

Leininger seeks recovery of the attorneys' fees and costs incurred in defending against all claims against her from the date of filing of the Amended Complaint. Leininger is further entitled to fees and costs from January 15, 2021, pursuant to a rejected Offer of Settlement under section 768.79, Florida Statutes. In addition to seeking a ruling of entitlement to attorneys' fees and costs from this Court, Leininger seeks the imposition of sanctions against J. Ronald Denman, Grant Kindrick, and their law firm Bleakley Bavol Denman & Grace (collectively "Plaintiff's Counsel"), pursuant to both 28 U.S.C. §1927 and this Court's inherent authority, for Leininger's attorneys' fees and costs from the date of the Original Complaint, and any other sanctions that this Court deems appropriate.

## I.   PROCEDURAL BACKGROUND.

### a.   Plaintiff's Allegations Against Leininger.

Hadcock was deemed incapacitated on December 14, 2015, by the Circuit Court in and for Lake County, Florida (the "State Court") in Case No. 2015-GA-1273 (the "Guardianship Case"). Leininger was appointed as Hadcock's professional guardian. On March 24, 2020, Plaintiff's Counsel filed a Notice of Appearance and received access to all Orders in the Guardianship Case. On March 5, 2020, Plaintiff's Counsel filed the Original Complaint (Dkt. 1), and on August 7, 2020—after Hadcock was deposed—filed an Amended Complaint (Dkt. 60).

Amongst other allegations, Plaintiff alleged damages related to: Leininger's payment to Somerset Assisted Living Facility ("Somerset") (Dkt 1, ¶69, Dkt. 60, ¶101); payment of Leininger's guardian fees (Dkt 1, ¶70, Dkt. 60, ¶102); Leininger's sale of 31742 Tropical Shores Blvd ("Tropical Shores") (Dkt 1, ¶88, Dkt. 60, ¶123); Leininger's sale of Hadcock's personal property, (Dkt 1, ¶88, Dkt. 60, ¶123); Leininger's payment for Attorney Michael Rogers' ("Rogers") fees (Dkt 1, ¶99, Dkt. 60, ¶134); Leininger's payment for Attorney Kimberly Schulte's ("Schulte") fees (Dkt 1, ¶158, Dkt. 60, ¶134); Leininger's payment of the Examining Committee Fees (Dkt 1, ¶158, Dkt. 60, ¶134); and Leininger's alleged mismanagement of Hadcock's funds and exploitation of Hadcock (Dkt 1, ¶160, Dkt. 60, ¶138). Plaintiff's Counsel further advanced that: Leininger refused to send money to Hadcock, despite being court-ordered to do so (Dkt 1, ¶95, Dkt. 60, ¶130); Hadcock had never been incapacitated (Dkt 1, ¶83, Dkt. 60, ¶118); and Leininger never petitioned to transfer the guardianship to New York, repeatedly ignored Hadcock's pleas to leave Somerset (Dkt 1, ¶65, Dkt. 60, ¶¶97-99), and caused Hadcock severe emotional distress (Dkt 1, ¶¶238-43, Dkt. 60, ¶¶277-82). On November 3, 2020, Leininger produced all documents relating to Hadcock's guardianship.

### b.  Plaintiff's Counsel Engages Mitchell Kitroser As An Expert.

On November 30, 2021, Plaintiff's Counsel disclosed their expert Mitchel Kitroser ("Kitroser"). (Dkt. 173). In his report, Kitroser cited Rule 58m-2.009 ("Rule 58m") and Chapter 744, Florida Statutes, as the only basis for his opinions as to Leininger. Kitroser opined that Leininger: breached her fiduciary duty in the

management of Hadcock's property; improperly and unnecessarily sold Tropical Shores and Hadcock's personal property; exploited Hadcock; improperly paid her guardian fees; and improperly paid other fees (Schulte's, Rogers', Examining Committee's, and Somerset's). A copy of Kitroser's Report is filed concurrently herewith. According to the report, Kitroser reviewed deposition transcripts, the Amended Complaint, and the Guardianship Case. (Kitroser Rpt. P.9).

During his February 2022 deposition, Kitroser testified that he had never spoken to any witness and had never met or spoken to Hadcock.  (Kitroser Depo., p. 12, L. 4-7). Despite spending "a little time with" the Accountings, he opined that guardianship funds were not spent on Hadcock's support. (Kitroser Depo., pp.177-178, L.19-25). At trial, he opined that Rule 58m merely codified the existing standards and status of common law.

### c. Plaintiff And Plaintiff's Counsel Continue Their Allegations Through Pre-Trial.

In December 2022, the Parties filed their Joint Pre-Trial Stipulation. (Dkt. 311). Plaintiff's Counsel sought to recover damages related to Tropical Shores (Dkt. 311, pp. 23); personal property at Tropical Shores (Dkt. 311, pp.25); Hadcock's vehicles (Dkt. 311, pp.26); Leininger's fees (Dkt. 311, pp.27); Rogers' fees (Dkt. 311, pp.27); Schulte's fees (Dkt. 311, pp.27); Examining Committee fees (Dkt. 311, pp.27); and Somerset's fees (Dkt. 311, pp.28). Plaintiff's Counsel also continued to allege that Leininger failed to account, mismanaged Hadcock's assets, and that monies were

missing. (Dkt. 311, pp.28-30). In total, Plaintiff and Plaintiff's Counsel sought $26,315,312.29 in damages against Leininger. (Dkt. 311, pp.22-30).

### d. Plaintiff's Counsel Stipulated To Unrefuted Evidence At Trial And Kitroser Changed His Opinion Mid-Trial.

At trial, the parties admitted, *pursuant to stipulation*, Leininger's Exhibit 133—a Rule 1006 Summary of Leininger's Accountings. (Leininger 133). Exhibit 133 contained no information that was not readily available to Plaintiff's Counsel *prior to the Original Complaint*. More importantly, Exhibit 133 showed that every penny that came into the guardianship was accounted for, down to the last $0.30 Check transferred to the New York Guardian. (Leininger 133). And that every penny was utilized to pay for Hadcock' debts, taxes, claims, charges, and expenses of the guardianship and for the care, support, and maintenance of Hadcock. *See* §744.361(12); (Leininger 133). *Not a single line item was refuted by Plaintiff's Counsel*.

In the middle of trial, despite issuing a report chastising Leininger for the sale of Hadcock's property, Kitroser reversed his opinion, opining that "all sales of the property were necessary" and that Hadcock was "cash poor." Still, even though Plaintiff's Counsels' expert opined that the sale of the Tropical Shores Property was "necessary" and Leininger was required to follow all court orders, in their closing arguments to the jury, Plaintiff's Counsel continued to argue for damages related to the sale of the Tropical Shores real property pursuant to State Court Order.

## II.   LEININGER'S ENTITLEMENT TO ATTORNEYS' FEES.

### a.  Leininger Is Entitled To Attorneys' Fees On Plaintiff's Claims Of Elder Exploitation Under Section 772.11, Florida Statutes.

Leininger is permitted to recover her attorneys' fees and costs from August 7, 2020, the date that Plaintiff first pled the statutory claim of Elder Exploitation, through the date this Court enters entitlement, because defendants who defeat a section 772.11 claim brought without substantial factual or legal support are entitled to recover costs and reasonable attorneys' fees. *Bronson v. Bronson*, 685 So. 2d 994, 995 (Fla. 5th DCA 1997). The language of the statute providing for reimbursement of such fees is mandatory, not permissive. §772.11, Fla. Stat.

Importantly, at trial, the Court granted Leininger's *ore tenus* Rule 50 Motion for Judgment as a Matter of Law as it relates to Plaintiff's Elder Exploitation claim. (Dkt. 386). Judgment as a matter of law is granted when the Court finds "a party has been fully heard on an issue during a jury trial and . . . a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50. Thus, by granting judgment as a matter of law, the trial court made a *per se* determination that the claim was without any factual evidentiary support. *Friedman v. Lauderdale Med. Equip. Serv.*, 591 So. 2d 328, 329 (Fla. 4th DCA 1992); *see also In re Gen. Plastics Corp.*, 170 B.R. 725, 735 (Bankr. S.D. Fla. 1994). Accordingly, under section 772.11, Leininger is entitled to recover her attorneys' fees from the date of the Amended Complaint.

### b. Plaintiff's Claims Are Inextricably Intertwined.

When a claim that provides for the recovery of attorney's fees is inextricably intertwined with other allegations so that the fees for the individual claims cannot be distinguished, it is permissible to award fees for the entire litigation. *See Castro v. Capital One Servs., Ltd. Liab. Co.*, No. 8:16-cv-889-T-17TGW, 2017 U.S. Dist. LEXIS 213936, at *9 (M.D. Fla. Dec. 15, 2017) (citing *United States v. Jones*, 125 F.3d 1418, 1430 (11th Cir. 1997)). The Eleventh Circuit has taken an expansive view in determining whether claims are related by a common core of facts. *See Popham v. City of Kennesaw*, 820 F.2d 1570, 1579 (11th Cir. 1987) ("Because plaintiff's counsel is required to 'explore every aspect of the case, develop all the evidence and present it to the court,' courts have expansively treated claims as being related." (citations omitted))

Plaintiff's allegations related to Elder Exploitation are indistinguishable from her allegations related to Intentional Infliction of Emotional Distress, False Imprisonment and Leininger's Breach of Fiduciary Duty. In fact, Plaintiff's Amended Complaint reincorporated paragraphs 1 through 139—the entirety of the General Allegations used in each claim—in Plaintiff's Elder Exploitation claim against Leininger. (Dkt. 60, ¶330). Under Elder Exploitation, Plaintiff alleged that Leininger "knowingly and intentionally unlawfully held Plaintiff against her will, deceived Plaintiff, and exploited Plaintiff financially." (Dkt. 60, ¶332). Thus, not even Plaintiff's Counsel discerned between the allegations and the facts related to each claim. Accordingly, Leininger should be awarded her attorneys' fees for her entire defense from August 7, 2020, the date of Plaintiff's Amended Complaint.

### c.  Alternatively, Pursuant To Section 768.79.

Leininger is similarly permitted to recover the entirety of her attorneys' fees and costs from January 15, 2021, pursuant to a rejected Offer of Judgment. § 768.79, Fla. Stat; Fla. R. Civ. P. 1.442. A true and correct copy of Leininger's Offer of Judgment is filed concurrently herewith. Section 768.79 is substantive law, and its provisions are fully applicable to diversity cases in federal court. *See Menchise*, 532 F. 3d 1150-51; *McMahan v. Toto*, 256 F. 3d 1120, 1132 (11th Cir. 2001). Florida law provides that, "[i]f a defendant serves an offer which is not accepted by the plaintiff, and if the judgment obtained by the plaintiff is at least 25 percent less than the amount of the offer, the defendant shall be awarded reasonable costs, including investigative expenses, and attorney's fees." § 768.79(7)(a), Fla. Stat. A defense verdict constitutes "a judgment at least 25 percent less than the amount of the offer." *See, e.g., Menchise v. Akerman Senterfitt*, 532 F. 3d 1146, 1149 (11th Cir. 2008). Leininger's Offer of Judgment was rejected. *See* Fla. R. Civ. P. 1.442(f)(1).

An award of attorneys' fees under section 768.79 is mandatory if the statutory requirements are satisfied and if the offer of judgment was made in good faith. *Respiratory Care Servs., Inc. v. Murray D. Shear, P.A.*, 715 So. 2d 1054, 1056 (Fla. 5th DCA 1998). Leininger's Proposal for Settlement met all the requirements. In addition, Federal Rule of Civil Procedure 54(d)(1) provides for an award of costs "other than attorneys' fees" to the "prevailing party." Because Leininger was the "prevailing party" on all claims, Leininger is also entitled to an award for her costs.

**d.  Leininger's Attorneys' Fees and Costs are Reasonable.**

Federal courts use the "lodestar" method when determining a reasonable fee award. *Westgate Resorts, Ltd. v. Castle Law Group, P.C.*, 2019 U.S. Dist. LEXIS 152220, at *33-34, 2019 WL 4228551 (M.D. Fla. Aug. 21, 2019). Pursuant to this method, a reasonable fee is calculated by multiplying the number of hours reasonably expended by a reasonably hourly rate. *See id.*

Leininger's Counsel spent a total of 1,944.44 hours defending this matter through February 23, 2023. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The strongest and best evidence of an attorney's market rate is the hourly rate the attorney charges clients. *See Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000). However, courts may also consider the *Johnson* factors and rely on their own knowledge and experience. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (citation omitted).[2] A summary of the time spent, and hourly rates is as follows:

| Professional | Hours | Hourly Rate | Total |
|---|---|---|---|
| Phillip S. Smith, Esq. (Managing Partner) | 596.04 | $450 | $268,218.00 |

---

[2] The Johnson factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

| Professional | Hours | Hourly Rate | Total |
|---|---|---|---|
| Daniel J. Kersey, Esq. (Associate) | 841.10 | $325 | $273,357.50 |
| Loren M. Vasquez, Esq. (Associate) | 145.90 | $375 | $54,712.50 |
| Matthew D. Black (Of Counsel) | 266.80 | $375 | $100,050.00 |
| Keri McCarthy/Burroughs (Paralegal) | 62.40 | $100 | $6,240.00 |
| Megan Willett (Paralegal) | 4.00 | $100 | $400.00 |
| Kitty Bridges (Other) | 16.80 | $100 | $1,680.00 |
| Rylee Burroughs (Other) | 11.40 | $100 | $1,140.00 |

Additionally, John D. Goldsmith, Esq.'s ("Goldsmith") Declaration is filed contemporaneously with this Motion. In his Declaration, Goldsmith opines that the hourly rates for each attorney performing services in this case were reasonable based on the level of experience and background of the lawyers providing the service. Additionally, Goldsmith reviewed the docket, a sampling of trial documents, a brief summary of the case, and McLin Burnsed, P.A.'s Statement of Account, and further opines that the time spent on each task was reasonable for the level of experience of each lawyer posting them and the complexity of the task performed. The Declaration of John Goldsmith supporting Leininger's reasonable expenses includes a detailed account summary of the hours incurred. The *Johnson* factors also support the determination that the foregoing hourly rates are reasonable. *Cf. Johnson*, 488 F.2d at 717-19.

Leininger states that as of the date of the Original Complaint, Leininger is entitled to $705,798.00 in attorneys' fees.[3] Leininger further states that as of the date of the Amended Complaint, Leininger is entitled to $579,070.50 in attorneys' fees. As of the date of Leininger's Offer of Judgment, Leininger is entitled to $470,358.00 in attorneys' fees. Leininger is entitled to **$10,180.93** in costs. Phillip S. Smith's Affidavit includes a detailed breakdown of the costs incurred.

### III.   LEININGER SEEKS SANCTIONS AGAINST PLAINTIFF'S COUNSEL

Leininger seeks to hold Plaintiff's Counsel liable for the attorneys' fees and costs which were multiplied unnecessarily in this litigation by Plaintiff's Counsels' bad faith, reckless, unreasonable, and vexatious actions in (a) seeking to hold Leininger liable for actions which were expressly authorized by the underlying State Court, (b) failing to properly investigate their causes of action prior to initiating litigation, and (c) continuing with allegations contradicted by the facts of the case. Leininger seeks to impose liability on Plaintiff's Counsel for Leininger's attorneys' fees and costs from the Original Complaint, and for any other sanctions this Court deems appropriate under 28 U.S.C. 1927 and its inherent power.

#### a.  Standards For Sanctions

##### i.  28 U.S.C 1927.

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to

---

[3] These amounts are based upon a determination by the Court that Plaintiff's Claims were inextricably intertwined.

satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Court may impose award sanctions under § 1927 where: 1) the attorney engaged in "unreasonable and vexatious" conduct; 2) that conduct "multiplie[d] the proceedings"; and 3) the amount of the sanction bears a "financial nexus to the excess proceedings, i.e., the sanction may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).

Section 1927 does not define "vexatious." The Eleventh Circuit has stated, however, that "[b]ad faith is the touchstone" for § 1927 sanctions. *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). The Eleventh Circuit has also explained that § 1927 was designed to sanction attorneys who "willfully abuse [the] judicial process by conduct ***tantamount to bad faith***." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (emphasis added). "Bad faith is an objective standard that is satisfied when an attorney knowingly ***or recklessly*** pursues a frivolous claim." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010) (citing *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2007) (emphasis added). The Eleventh Circuit has also warned that "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan*, 932 F.2d at 1582 (upholding attorneys' fees and costs as sanctions for continuing with frivolous claims).

The standard is an objective one turning "not on the attorney's subjective intent, but on the attorney's objective conduct." *Id.* In *Norelus v. Denny's, Inc.*, the Eleventh Circuit said that "objectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently." 628 F.3d 1270, 1282 (11th Cir. 2010). The Court is required to compare the conduct at issue with how a reasonable attorney would have acted under the circumstances. *Id.*

### ii. The Court's Inherent Authority.

The Court may also award attorney's fees as part of its "inherent power to control the proceedings before it" – a power that is separate and distinct from its power to sanction provided by § 1927. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545 (11th Cir. 1993). Pursuant to this "inherent power," the Court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). The United States Supreme Court has explained that "[i]n this regard, if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party." *Id.* at 46 (internal quotation omitted).

According to the Eleventh Circuit, "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Therefore, as with section 1927 sanctions, the imposition of sanctions pursuant to the Court's "inherent power" is premised on a finding of "bad faith." Similarly, In the context of "inherent power" sanctions, the Eleventh Circuit has stated that "[a] finding

of bad faith is warranted where an attorney knowingly *or recklessly* raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Id.* at 1214 (emphasis added). The Eleventh Circuit permits sanctions to be imposed against attorneys *and* law firms under section 1927 and its inherent power to sanction. *Collar v. Abalux, Inc.*, 806 F. App'x 860 (11th Cir. 2020).

### b. Plaintiff's Counsel's Bad Faith, Reckless, And Unreasonable Conduct.

#### i. *Plaintiff's Counsel's Failure To Investigate Prior To Initiating Litigation was Reckless and Tantamount to Bad Faith.*

Attorneys are required to investigate their client's allegations prior to initiating litigation. *See Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (affirming an award of sanctions for counsel's failure to reasonably inquire into the underlying facts before initiating litigation). Here, if Plaintiff's Counsel had investigated Plaintiff's claims or reasonably inquired into the materials handed over to them in discovery, they would have realized that they had no legal basis to challenge Leininger's actions, taken pursuant to Court Order, and no credible evidence of exploitation. Instead, Plaintiff's Counsel blindly relied on the assertions of their client and her associates. *See Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) ("Blind reliance on the client is seldom a sufficient inquiry."). Counsel cannot simply rely on a client's patently incredible testimony when any reasonable investigation of the factual bases for the client's claims or examination of materials obtained in discovery would reveal the paucity and implausibility of the evidence. *Dent v. Giaimo, D.O., P.A.*, 665 F. Supp. 2d 1295, 1305 (S.D. Fla. 2009) (awarding sanctions against plaintiff's

counsel for not making adequate inquiry into the facts before filing the lawsuit because "such inaction is tantamount to bad faith").

Plaintiff's Counsel had access to the State Court Orders prior to filing Plaintiff's Original Complaint. Plaintiff's Counsel also had access to the State Court Orders by March 24, 2020, at the latest. However, both Plaintiff's Counsel and their expert ignored the clear and unequivocal mandate of Rule 58m, that "*[a]ny action taken by a Professional Guardian pursuant to a court order shall not be deemed a violation of this rule*," and continued to perpetuate their allegations that such actions by Leininger were improper. A simple review of Rule 58m and the State Court Orders would have revealed Leininger was "authorized and directed" to pay Schulte's Fees, Rogers' Fees, Examining Committee Fees, and Somerset's fees, and authorized to sell Tropical Shores, Hadcock' personal property, and Hadcock' vehicles.

Plaintiff's Counsel simply ignored the facts and presented Plaintiff's unfounded and incredible narratives to the Court and the jury. For instance, Plaintiff's Counsel repeatedly advanced the allegation that "despite obtaining authorization from the Guardianship Court" to send money to Hadcock, "Leininger refused to send any payments to Hadcock." (Dkt. 1, ¶95, 60, ¶130). However, this assertion has been patently false since July 14, 2017—965 days prior to the Original Complaint—when the State Court **DENIED** Leininger's Petition for Monthly Allowance to Ward. Plaintiff's Counsel also advanced that Hadcock "is not, and never was, mentally incapacitated." (Dkt 1, ¶83, Dkt. 60, ¶118). But once again, this assertion was patently false because, *as a matter of Florida law*, Hadcock was deemed incapacitated by the State

Court on December 10, 2015, and remained incapacitated until her guardianship was transferred to New York on January 11, 2019, wherein the State of New York *continued* to find Hadcock incapacitated. (Leininger 043, 112, 119). Ignoring the Florida and New York Court's Orders however, Plaintiff's Counsel deposed several witnesses to dispute Hadcock's incapacity.

Similarly, Plaintiff's Counsel elicited testimony from Kitroser at trial that Leininger never petitioned to transfer Hadcock' guardianship to New York. However, this allegation had been false since August 16, 2018—567 days prior to the Original Complaint. (Leininger 112, exh. A). Despite this, Plaintiff's Counsels' closing arguments included such a false narrative that the undersigned had to rebut and correct the record in his Closing.

Further, in the Original Complaint, Plaintiff and Plaintiff's Counsel allege that Leininger falsely imprisoned Hadcock at Somerset and that Hadcock requested Leininger to help her leave Somerset. (Dkt. 1, ¶¶63, 147-154). However, Hadcock' own sworn testimony on July 27, 2020, that she never made such a request expressly refutes that allegation:

> **Q.** **And during these four appointments, did you have any conversations with [Leininger] at all about your stay at Somerset?**
>
> A.  No. [...]
>
> **Q.** **Okay. Can you tell me, did you talk to Pat Leininger from December, when she was appointed, to March 5th, did you talk to her about her helping you get out of Somerset?**

> A.    No. She didn't do any of that as far as I know, no. I mean I don't think I got help from her at all, that I know of.
>
> **Q.    Did you ask her for help to get out of there?**
>
> A.    Well, she knew that. I didn't have to ask her. She's my guardian. She ought to know I want to be out of there.
>
> **Q.    Okay. Well, I understand what she might should know, but I'm asking you did you talk to her about helping you get out of Somerset?**
>
> A.    No, I did not talk to her about that, as far as I know at that time, no.

[…]

> **Q.    Okay. Do you know if Pat Leininger ever did anything to prevent you from getting out of Somerset?**
>
> A.    No, I don't know what she did, no.

(Hadcock Depo., pp.336-338, L.8-11). After this testimony was elicited, Plaintiff's Counsel filed the Amended Complaint, maintaining the same allegations. (Dkt. 60, ¶¶97, 182-189). Rather than investigating this claim further with their client or later considering her deposition, Plaintiff's Counsel ignored Hadcock' sworn testimony and pressed on with their unfounded narrative.

Further, Plaintiff's Counsel failed to perform the basic exercise of reviewing the Accountings to determine if any guardianship funds were missing or misused. Instead, Plaintiff's Counsel turned a blind eye towards the only evidence on the matter—the Accountings—and continued to parrot Plaintiff's unfounded claim that funds were stolen. It was not until the undersigned submitted Leininger's Exhibit 133 at trial, a Rule 1006 Summary of the Accountings, which was admitted by stipulation, that

Kitroser and Plaintiff's Counsel abandoned most of their baseless allegations of exploitation. (Leininger 133).

Additionally, section 772.11, Florida Statutes, required Plaintiff to deliver a written demand for $200 or the treble damage amount of *actual damages* suffered prior to bringing the elder exploitation claim. To do so, Plaintiff's Counsel was required to review and analyze the accountings, much like Leininger's counsel ultimately did when creating the Rule 1006 Accounting Summary. Ignoring such duty, six days after filing the Original Complaint, Plaintiff's Counsel delivered a demand to Leininger for $15 million, alleging that Leininger exploited Hadcock for $5 million. That demand was baseless after any conceivable examination of the Accountings, or the facts at large, and only magnified the frivolity of Plaintiff's Counsel blind pursuit of Plaintiff's claims. Even the most cursory investigation of the Accountings and Hadcock's assets would have revealed that every penny for which Leininger was responsible was accounted for. (Leininger 093, 106, 121, 133). Further, Plaintiff's Counsel should have been on higher alert to the accuracy of the Accountings since the Clerk of Court Auditor—the entity charged with auditing the finances of guardianships—had reviewed and approved each of Leininger's accountings. And so did the State Court.

      *ii.*   *Plaintiff's Counsel Multiplied the Proceedings by Pursuing Their Claims After Plaintiff's Allegations Were Expressly Contradicted By The Facts.*

Despite not performing any reasonable pre-suit investigation, Plaintiff's Counsel relentlessly pursued the claims after the Court Orders and Accountings were delivered to them in discovery. Plaintiff's Counsels' actions are similar to those in

*Norelus*, where the Eleventh Circuit Court held that the pursuit of Norelus' claims amounted to "objectively reckless conduct" that multiplied the proceedings in the case "unreasonably and vexatiously." 628 F.3d at 1270. Despite Norelus' allegations, there was nothing to support claims of workplace harassment, abuse, and criminal behavior other than the plaintiff's own contradicting testimony that was discredited by numerous lapses of memory, outright lies, and outlandish comments made during her deposition. *Id.* Ultimately, all the facts that were meant to support the plaintiff's allegations not only failed to support her incredible story but contradicted them. *Id.* Here, Plaintiff's Counsel also unreasonably and vexatiously multiplied the proceedings by continuing to rely on only Hadcock's claims and testimony, which were discredited by her own testimony, the facts, and evidence that were readily available to them.

"When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan*, 932 F.2d at 1582 (citations omitted) (affirming one million dollars in sanctions for bad faith conduct of continuing litigation that was clearly contradicted by the known facts). In *Norelus*, the attorneys refused to discontinue their quest for a judgment even after the sole source of evidentiary support for their client's claims had been rendered useless and were thus subject to sanctions. 628 F.3d at 1302.

Plaintiff's Counsel's actions are also like those in *Alphonso v. Pitney Bowes, Inc.*, where the United States District Court for New Jersey awarded sanctions when plaintiff's counsel should have known that a claim for economic damages caused by

wrongful termination was limited but pursued excessive damages anyway. 356 F. Supp. 2d 442, 454-55 (D.N.J. 2005). The plaintiff was unemployed for only two months and then employed at a higher rate of pay than he had with the defendant; despite that fact, plaintiff's counsel hired an expert to testify that plaintiff would have made more working for the defendant. *Id.* at 448-49. Plaintiff's counsel continued to pursue their claims until mid-trial when they decided to drop their claim for the excessive damages. The court found that the continued pursuit of damages—despite all the evidence being contradictory to plaintiff's claim—provided a basis to impose sanctions on plaintiff's attorneys and that the continued pursuit of such damages reasonably caused defendants to unnecessarily incur the expense of preparing to rebut such evidence at trial. *Id.* at 454-455.

Here, Plaintiff's Counsel ignored the State Court Orders authorizing and directing Leininger to pay Hadcock's creditors and authorizing Leininger to sell Hadcock' Property. Then, Plaintiff's Counsel and their expert, Kitroser, ignored the second paragraph of Rule 58m that "[a]ny action taken by a Professional Guardian pursuant to a court order shall not be deemed a violation of this rule." Had Plaintiff's Counsel engaged in any reasonable investigation and analysis of their claims and the applicable law, they would have realized that no reasonable attorney would have spent three years litigating and trying to establish liability and damages for a professional guardian's acts pursuant to Court Orders. Further, and even more appalling than *Alphonso*, Plaintiff's expert stated that he *did* review the Accountings; however, he refused to conduct any in-depth analysis of how Hadcock's money was utilized.

Instead, Plaintiff's Counsel waited until Leininger's Rule 1006 Summary was presented at trial to reverse their quest and abandon *some* allegations of exploitation and misuse.

### c. PLAINTIFF'S COUNSEL UNREASONABLY MULTIPLIED THE PROCEEDINGS.

From the date of the Original Complaint through Pre-Trial, Leininger was forced to defend against Leininger's sale of Tropical Shores Property and Leininger's actions pursuant to State Court Orders and allegations that Leininger exploited Hadcock and that Hadcock was never incapacitated. Mid-trial, after Plaintiff's expert abandoned his participation in Plaintiff's Counsel's quest, Kitroser salvaged only six complaints against Leininger: (1) Leininger did not immediately assist Hadcock in moving to New York with the Carriers; (2) Leininger did not remedy the errors in an original guardianship order quicker; (3) Leininger "conspired" with Harry Hackney to remove Hadcock' rights to travel and determine her residence; (4) Leininger did not send money to Hadcock; (5) Leininger objected to Carrier's Healthcare Surrogate, and (6) Leininger did not petition for a guardianship of the person in New York. When prompted, however, Kitroser opined that Hadcock suffered *no damage* from any of these actions. Moreover, number 6 was shown to be blatantly untrue.

Thus, nearly the entirety of Plaintiff's Litigation was multiplied by Plaintiff's Counsel failure to properly investigate the Accountings, apply the explicit law to the facts of the case, and accept the unrefuted facts that rendered Plaintiff's incredible allegations untrue. Had Plaintiff's Counsel properly investigated Plaintiff's Case or

ceased their quest when the facts did not support their claims, the proceedings would not have been as protracted as they relate to Leininger.

### d.  Leininger Seeks Fees-for-Fees.

The plain language of 28 U.S.C. § 1927 establishes that, in making a sanctions award to a party, a court may include the "costs, expenses, and attorneys' fees" that the party victimized by the sanctionable conduct incurred in obtaining the award. After all, those costs are, in the statute's terms, "incurred because of such conduct." *Id.* If there were no sanctionable conduct there would have been no proceeding to impose sanctions. Because the costs arising from the sanction's proceedings were "occasioned by the objectionable conduct," *McMahan*, 256 F.3d at 1128 (citing Peterson, 124 F.3d at 1396), a district court may include costs arising from the sanction's proceedings in the sanctions award. *Norelus*, 628 F.3d at 1298.

### e.  Attorneys' Fees For The Instant Motion

In the Eleventh Circuit, parties are allowed to recover the cost of establishing their right to, and the amount of, attorneys' fees. *See Norelus*, 628 F.3d at 1301. Here, to fully compensate Leininger for Plaintiff's and Plaintiff's Counsels' wrongful conduct, Leininger should be awarded her attorneys' fees incurred in relation to the instant Motion. Leininger's counsel expects to expend an estimated 28 hours in relation to the instant Motion and further seeking entitlement to and an award of attorneys' fees. An estimated summary of this time is as follows:

| Professional | Hours | Hourly Rate | Total |
|---|---|---|---|
| Phillip S. Smith, Esq. | 11 | $450 | $9,000 |

| Professional | Hours | Hourly Rate | Total |
|---|---|---|---|
| Daniel J. Kersey, Esq. | 7 | $325 | $2,275 |
| Loren M. Vasquez, Esq. | 10 | $375 | 3,750 |

WHEREFORE, Leininger moves this court for entry of an Order, in Leininger's favor and against Plaintiff, determining:

A. Leininger is entitled to attorneys' fees and expenses incurred in defending this action from the date of:

    i.   The Amended Complaint until the date this court determines such entitlement and establishes the amount of fees, a reasonable estimate of which is $579,070.50;

    ii.   The Original Complaint until the date this court determines such entitlement and establishes the amount of fees, a reasonable estimate of which is $705,798.00;

    iii.   Leininger's Offer of Judgment until the date this court determines such entitlement and establishes the amount of fees, a reasonable estimate of which is $470,358.00;

B. Leininger is entitled to Costs in the amount of $10,180.93;

C. Leininger is entitled to the Attorneys' Fees for the instant Motion and through entitlement and a determination of the amount of fees, a reasonable estimate of which is $15,025.00;

D. Sanctions are appropriate against:

    i.   J. Ronald Denman, jointly and severally,

  ii.  Grant Kindrick, jointly and severally, and

  iii.  Bleakley Bavol Denman & Grace, jointly and severally,

E.  Fixing the amount of Sanctions against J. Ronald Denman, Grant Kindrick and their law firm, Bleakley Bavol Denman & Grace, which Leininger requests be equivalent to or a substantial portion of her Attorneys' Fees since the date of the Original Complaint; and

F.  For any other relief this Court deems just and appropriate.

Respectfully submitted this 16th Day of March 2023.

         **McLIN BURNSED**

         */s/ Phillip S. Smith*
         **Phillip S. Smith**
         Florida Bar No. 0999040
         **Daniel J. Kersey**
         Florida Bar No. 1011013
         **Loren M. Vasquez**
         Florida Bar No. 0120155
         Post Office Box 491357
         Leesburg, FL 34749-1357
         Telephone: 352/787-1241
         Facsimile: 352/326-2608
         Primary: PhilS@mclinburnsed.com
         Primary: DanielK@mclinburnsed.com
         Secondary: LorenV@mclinburnsed.com
         Secondary: KeriM@mclinburnsed.com
         *Attorneys for Defendant, PATRICIA R.*
         *LEININGER*